THE DRAINAGE COMMISSIONERS OF DRAINAGE DISTRICT
No. 8, Appellants, *vs.* CHARLES KNOX, Appellee.

*Opinion filed December 15, 1908.*

1. EMINENT DOMAIN—*property need not be "taken," in its literal sense, to entitle owner to compensation.* Property in land, in the sense in which the word "property" is used in the constitution, means the right of user, disposition and dominion to the exclusion of all others, and the acquiring of an easement for public use is a material and permanent interruption of the right of user, which entitles the owner to compensation for property taken.

2. SAME—*acquiring of permanent right to enter land to lay and repair tile is a taking of property.* The acquiring, by a drainage district, of the right to enter upon land permanently for the purpose of laying, maintaining and repairing a line of tile is a taking of property, within the meaning of the constitutional provision requiring compensation for property taken for public use.

3. SAME—*when a proceeding by drainage district is a case of taking and not of damage.* A proceeding by a drainage district to ascertain the compensation to be paid a land owner for the laying and maintaining of a tile drain in a strip of land of certain width is a case of taking and not of damage, even though but a small portion of the width of the strip is to be occupied by the tile; but if the owner retains substantial rights in the remainder of the strip the measure of his compensation is less than the full market value of the land.

4. SAME—*nature of interest acquired affects amount of compensation.* The nature and extent of the interest acquired in a condemnation proceeding is to be considered in determining the compensation for the taking, and where the right acquired is practically exclusive, as in the case of a railroad right of way, the measure of compensation is the full market value of the land taken; but in any case the owner is entitled to be paid for such rights of use and enjoyment as are taken.

5. NEW TRIAL—*when alleged improper conduct of defendant with juror is absolved by affidavits.* Where improper conduct of the defendant in talking to a juror about the case is charged as ground for new trial, affidavits by the juror and the defendant stating that the defendant did not talk or attempt to talk about the case to the juror, and that the juror had no personal acquaintance with the defendant, absolves the defendant from such charge.

6. SAME—*when charge of treating jury is properly ignored.* A charge that the defendant in a condemnation case treated the jury

to cigars is properly ignored by the court as a ground for new trial, where it appears that when the jury were *en route* to view the premises one of the jurors suggested that some one ought to furnish cigars for the crowd, whereupon defendant, who was in the habit of smoking, took some cigars from his pocket and gave them to the jurors, and petitioners' attorney gave them peanuts.

7. ARREST OF JUDGMENT—*formal defects of description in cross-petition for damages are cured by verdict.* Formal defects of description or a lack of certainty in a cross-petition for damages, which merely describes the defendant's farm as a farm of a certain number of acres owned by him across which the petitioners' tile was to be laid, and which sets forth elements of damage to the farm by a probable interference with the existing system of drainage, are cured by verdict.

APPEAL from the Circuit Court of Vermilion county; the Hon. JAMES W. CRAIG, Judge, presiding.

REARICK & MEEKS, for appellants.

WALTER V. DYSERT, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The drainage commissioners of Drainage District No. 8 in the town of Oakwood, in Vermilion county, appellants, filed their petition in the county court of said county to ascertain the compensation to be paid to Charles Knox, appellee, for the laying and maintenance of an eighteen-inch drain tile across his farm upon a strip of land of the width of sixty feet, being thirty feet on each side of the center line of the ditch in which the tile was to be laid, with the right to pass over said strip of land for the construction, repair and maintenance of the tile drain. The defendant filed a cross-petition, alleging that the proposed tile drain and right of way would cross a farm owned by him containing 115 acres; that the center line of the proposed right of way followed the center of an open ditch ten feet wide and ten feet deep made by him across the farm; that his farm was drained by about fifteen car-loads of lateral tile,

laid eight rods apart, emptying into the ditch two feet above the bottom, and that his system of drainage would be injuriously affected and his farm damaged by the taking and use of the strip for the tile drain. A change of venue was taken to the circuit court, where the cause was tried, and the jury returned a verdict fixing the compensation to be paid for the property taken at $12.50 and the damage to the rest of the farm at $487.50. The defendant remitted $200 from the amount allowed for damages, and the court, after overruling motions for a new trial and in arrest of judgment, entered judgment for $12.50 for land taken and $287.50 for damages to land not taken. From that judgment the commissioners appealed.

It is first contended that the court erred in refusing to grant a new trial on the ground that the damages allowed were excessive and contrary to the weight of the evidence. At the opening of the trial it was stipulated that the width of the right of way should be cut down to thirty-one feet, of which one foot was to be south of the center line of the tile ditch and thirty feet on the north side, and the petition contained a statement that the defendant was to have the full use of the land for the purpose of raising crops, doing no injury to the drain, and the petitioners would claim no further rights than should be necessary for the construction, repair and maintenance of the tile drain. The cause was not tried upon the correct theory as to what constituted a taking of defendant's property, and it is evident that the amount allowed by the jury as damages consisted mainly of compensation for property taken, but the verdict as reduced by the *remittitur* was not excessive or contrary to the evidence. The witnesses for the petitioners were examined on the theory that the land taken consisted of only a strip of ground two feet wide in the bottom of the existing ditch in which the tile was to be laid, and they fixed the fair cash value of that strip at a fraction of an acre, estimating the farm at about $160 per acre. They were examined with

reference to ·the remainder of the thirty-one feet as though it were a question of damage to land not taken, and said that the market value of the strip would not be depreciated at all. The court, in the instructions given for the petitioners, directed the jury to fix the fair cash market value of a two-foot strip, and as to the remainder of the thirty-one feet gave the jury to understand that they were to allow, or not allow, damages accordingly as they should believe, from the evidence, that it would be, or would not be, depreciated in market value. As a question of law the whole thirty-one feet was proposed to be taken. The right to enter upon land permanently for the purpose of laying, maintaining and repairing a line of tile is a taking of property within the meaning of the constitutional provision requiring compensation for property taken for public use. Property need not be taken in the literal sense in order to entitle the owner to compensation for property taken, and, in fact, the right acquired is ordinarily a mere easement. The owner has the same amount of land as before, but the easement acquired for the public use is a material and permanent interruption in the use of the land, which is the taking of property. Property in land is the right of user and disposition and dominion to the exclusion of all others, and that is the sense in which it is used in the constitution. (*Rigney* v. *City of Chicago,* 102 Ill. ·64; *Illinois Central Railroad Co.* v. *Commissioners of Highways,* 161 id. 247.) The property taken may itself be no more than an easement, as when a street or highway is extended across the right of way of a railroad or there is a physical interference with a private easement. (*Metropolitan West Side Elevated Railroad Co.* v. *Springer,* 171 Ill. 170.) Property may be already devoted to a public use, but an additional burden, such as the erection of a telegraph line, is the taking of the property. (*Postal Telegraph-Cable Co.* v. *Eaton,* 170 Ill. 513.) Of course, the nature and extent of the interest acquired by the condemnation is to be considered in esti-

mating the compensation to be paid to the owner, but that does not affect the question whether the property is taken or not. In some cases, such as railroad right of way, the right acquired by the petitioner is practically exclusive, and the naked title which is left in the owner is for all practical purposes of no value. In such cases the damages must be assessed at the full market value of the land. In any case the owner is entitled to be paid for such rights of use and enjoyment of his land as are taken from him, and inasmuch as the defendant retains substantial rights in the strip of land, the measure of damages would not be the full market value. But it was not a case of damage but of taking. The testimony of witnesses for the petitioners that the defendant was deprived of no right of any value in a strip of land 1402 feet long across his farm was clearly wrong. The defendant's witnesses fixed the damage at from $500 to $1000, but they also counted the entry upon the strip of land, and the use of it, as damages. There was also evidence tending to prove that the present drainage system of the farm might be interfered with, and there might be other damage to the farm. The petitioners cannot complain of the manner in which the case was tried and the consequent confusion as between compensation and damage, but it is quite clear that the amount of the judgment, considered as a whole, for both compensation and damage, was not excessive.

It is next insisted that the court ought to have awarded a new trial on account of the conduct of the defendant. Two affidavits were filed by the petitioners stating that during the trial the defendant was seen talking to one of the jurors, and one affidavit stated that they were talking about the case. The defendant and the juror made affidavits that they did not talk about the case; that the defendant did not talk about it or attempt to do so, and that the juror had no personal acquaintance with the defendant. These affidavits were entirely sufficient to absolve the defendant from

any charge of improper conduct with that juror. Affidavits were also filed alleging that the defendant had treated the jury to cigars. It appeared from the affidavits presented by the parties that when the jury were sent by the court to view the premises in charge of a bailiff they made the trip on an interurban car and were accompanied by the attorney for the petitioners and by the defendant; that while on the way one of the jurors suggested that somebody ought to furnish cigars for the crowd; that defendant, who was in the habit of smoking, said that he had some in his pocket and they were welcome to them if they wanted to smoke; that some of the jurors took cigars and others did not, and that the attorney for the petitioners gave to members of the jury peanuts which he had in his pocket. When the motion for a new trial was being argued the attorney stated that if the court deemed it material he would file an affidavit denying any improper conduct on his part, but the court regarded it as unnecessary and ignored all the charges in reference to improper conduct on the part of either side. The court did not err in so doing. The cigars and peanuts must be placed in the same class, and whether one or the other would prove more alluring or have a greater effect in enticing a juror to the side of the tempter we are unable to say. We do not think that the conduct of either party would cause a juror to deviate from the path of rectitude or influence his verdict.

The court overruled the motion of the petitioners in arrest of judgment, which was based on the alleged insufficiency of the cross-petition in failing to describe defendant's farm with certainty or to expressly aver the supposed damages to the remainder of the farm not taken. The farm was not described by government description, but merely as a farm of 115 acres owned by the defendant, across which the tile was to be laid. It set forth elements of damage to the farm by a probable interference with the existing system of drainage, and also upon the theory that the open

ditch would be less effective in carrying water from low lands to the east. Any formal defect as to description or lack of certainty was cured by verdict. *Chicago and Alton Railroad Co.* v. *Clausen,* 173 Ill. 100.

The judgment is affirmed.

*Judgment affirmed.*