## Luella Sparks, Appellee, v. Max Scharlaw, Appellant.

1. DRAMSHOPS—*damages.* Causes of action alleged are not inconsistent but are supplemental to each other, and recovery may be had on either or both where the first three counts in a declaration allege sales to plaintiff's husband causing habitual intoxication and sales after notice not to sell to him and injury to plaintiff's means of support, and the fourth alleges sales causing him to become so intoxicated that on being pushed or knocked down he fell and broke his leg causing injury to plaintiff's means of support.

2. DRAMSHOPS—*cause of action.* A good cause of action is proved under counts alleging loss of support because of habitual intoxication caused by the defendant and alleging sales after knowledge, that plaintiff's husband was an habitual drunkard where it appears that the defendant sold such liquor to him for a long period, after knowledge that he was a drunkard, and after notice not to sell liquor to him, whereby the plaintiff suffered loss in her means of support.

3. PROXIMATE CAUSE—*how determined.* The question of proximate cause of an injury must be determined in each particular case by the application of common sense to the facts of the case.

4. DRAMSHOPS—*proximate cause.* In an action under the Dramshop Act for injury to means of support because of the breaking of the leg of the plaintiff's husband, alleged to have been caused by sales of liquor to him, it is a question for the jury whether such sales were the proximate cause of the injury where they might reasonably have found that the fall was caused by reason of intoxication, or by a push disconnected from the intoxication.

5. NEW TRIAL—*counter affidavits.* Counter affidavits may properly be filed on motion for new trial on the ground of disqualification or incompetency of a juror.

6. EVIDENCE—*sanity.* The proof is overwhelming that a juror formerly insane is fully restored and mentally competent where there are many affidavits to that effect by doctors and jurors and men who worked with him and further that he was discharged more than a year and a half before the trial, that he was carefully examined on *voir dire* before acceptance, and that he has served as juror in several cases since his discharge without traces of mental unsoundness being discovered, though affidavits by saloon keepers and one other state that he is insane.

7. BILL OF EXCEPTIONS—*contents.* An alleged inflammatory remark by counsel in argument is not saved for review where it is not shown in the bill of exceptions.

Appeal from the Circuit Court of Vermilion county; the Hon. W. M. THOMPSON, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 15, 1912.

T. B. COSGROVE, CHARLES TROUP and ALFRED ADAMS, for appellant.

CLARK & HUTTON, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is an action in case, under Section 9 of the Dramshop Act, brought by Luella Sparks against Max Scharlaw to recover damages for loss of means of support by reason of defendant's selling intoxicating liquor to plaintiff's husband, a teamster. The declaration contains four counts. Two of the counts aver in substance that the defendant, a saloon keeper, at various times within one year prior to the beginning of the suit, sold and gave intoxicating liquor to George Sparks, the husband of plaintiff, causing him to become habitually intoxicated, and that in consequence of such habitual intoxication her husband squandered his money, became greatly impoverished and ceased to attend to his business, by means whereof and in consequence of such intoxication plaintiff was

injured in her means of support. Another of the counts avers that the husband of plaintiff was an habitual drunkard, and the defendant having knowledge of such fact sold and gave him intoxicating liquor, etc.

The fourth count avers that defendant in 1910 sold and gave intoxicating liquor to her husband, then and there being in an intoxicated condition, and thereby, in whole or in part, caused the intoxication of her husband to such an extent that he was unable to protect himself, and in consequence of such intoxication, her husband, being unable to protect himself, upon being pushed or knocked to the floor then and there fell upon the floor and broke his leg and he has been thereby incapacitated from attending to his business, by means whereof she has been deprived of her means of support. The defendant plead the general issue. There was a trial by jury; a verdict in favor of plaintiff for $800 was returned on which judgment was rendered. The defendant appeals.

It is contended by appellant that the different counts set up inconsistent causes of action, and that the court erred in refusing to rule the plaintiff to elect under which she would proceed. The causes of action averred in the different counts are not inconsistent or repugnant. Under the first three counts plaintiff has a cause of action for loss of her means of support prior to the time the leg of her husband was broken. The proof shows that for eighteen months prior to that time, and after the defendant knew that George Sparks was an habitual drunkard and had been notified not to sell liquor to him, he continued to supply him with liquor and fostered the drunkenness of Sparks to such an extent that he neglected his business and did not support plaintiff as he had theretofore. A good cause of action was proved under the first three counts in the loss of plaintiff's support in consequence of her husband's habitual intoxication caused by defendant.

Under the fourth count the proof showed that on

December 2, 1910, liquor was sold and given to George Sparks in the saloon of appellant; that in the evening of that day he was staggering drunk and leaning against the bar of appellant's saloon; that "he was so drunk he could not stand upon his feet," that while leaning against the bar he was either pushed by one Andrews or his arm slipped off the bar and he fell to the floor; that he then got up, walked a short distance and sat down on a chair; that he got up from the chair to go home and fell down, and that he again got up and sat on the chair when it was discovered his leg was broken. The result of the broken leg was that he was confined to his house for three months, and appellee was thereby damaged in her means of support. The causes of action were not inconsistent but supplemental to each other, and plaintiff might recover on either or both causes of action. Reed v. Peoria & Oquawka R. R. Co., 18 Ill. 403; 21 Encyc. of Pl. and Pr. 797.

Appellant argues that a verdict in favor of the defendant should have been directed in his favor on the fourth count. It is contended that there was an intervening efficient cause for the breaking of Spark's leg, and that the intoxication of Sparks was not the proximate cause of the breaking of his leg and the consequent loss to appellee of her means of support. From the proof, the jury might reasonably have found that Sparks slipped, fell and broke his leg, if it was broken by the first fall, and that Andrews did not push him, or that by reason of his intoxication he fell because of a push, when he would not have fallen from such a push if he had not been intoxicated. The question of proximate cause has to be determined in each particular case by the application of common sense to the facts of the case. In this case the question was whether Sparks' leg was broken in consequence of the intoxication or because of a push disconnected from the intoxication. It was a question for the jury to decide

whether the leg was broken in consequence of the intoxication or of some other cause. Pullman Palace Car Co. v. Laack, 143 Ill. 243; Illinois Central R. R. Co. v. Sila, 229 Ill. 390; 133 Ill. App. 2; Stecker v. People, 217 Ill. 348.

The case was tried at the May term, 1911. On the hearing of the motion for a new trial appellant filed a number of affidavits, mostly made by saloon keepers, who say that Charles H. Leverenz, one of the jurors who sat on the case, was insane at the time of the trial. Appellee filed many counter affidavits made by jurors, doctors and men who had worked with Leverenz showing that the juror was in the possession of his natural faculties at the time he sat on the jury, and had been for twenty-two months prior thereto, during which time he had been working in railroad shops or on a farm. The juror had been adjudged insane, and for a short time had been in an asylum. Letters from the superintendent of the Eastern Hospital for the Insane, on file in the County Court of Vermilion county, copies of which were attached to an affidavit made by appellant, show that on February 5, 1910, the superintendent of the hospital notified the county judge that the parole of the juror had been extended to May 4; a letter dated August 1, 1910, to the county judge from the superintendent states that the juror was released on parole July 7, 1910, and if not returned before October 7, 1910, he will be entered as discharged. On October 8, a letter was written stating that the parole had been extended to January 7, 1911, and he would be discharged if not returned before that date. A letter dated February 1, 1911, states that Leverenz "was discharged as improved January 7, 1911."

A large number of affidavits presented on behalf of appellee show that the juror was intelligent and sane, and that counsel for appellant carefully examined the juror on his *voir dire* before accepting him.

It is insisted the court erred in permitting appellee to file counter affidavits. The question concerning which the affidavits were filed was not upon the merits of the case, but only incidental to the trial. They were concerning a matter to be decided by the court and not by a jury. The filing of counter affidavits is proper on a motion for a new trial on the ground of the disqualification or incompetency of a juror. The affidavits of jurors are admissable to sustain their verdict. Machen v. People, 115 Ill. 312; Drainage Comrs. v. Knox, 237 Ill. 148; Gilchrist Trans. Co. v. North Grain Co., 204 Ill. 510; Bowman v. Bowman, 64 Ill. 75; Sanitary District v. Culverton, 147 Ill. 392.

Leverenz had after his discharge from the asylum served as a juror on the trial of several cases. Neither the court, the attorneys nor any of the jurors discovered any traces of mental unsoundness, and all who made affidavits, except some saloon keepers and one other person, say he was sane and intelligent.

The affidavits show that the juror had been discharged from the asylum more than a year and a half before he sat as a juror. The proof is overwhelming that the juror was fully restored and mentally competent. In Macken v. People, 115 Ill. 312, a case where the defendant was convicted of perjury, it was contended, as a reason for a new trial and reversal of the case, that one of the jurors was of unsound mind. It was said "it does not appear the mind of the juror was so seriously impaired as to render him incompetent." "There is no satisfactory evidence that his mind was so much affected as to disqualify him as a juror." The appellant offered no proof in his defense on the trial and a verdict could not reasonably be returned otherwise than for appellee. The appellee was not prejudiced by the juror.

It is also urged that counsel for appellee, in his closing argument to the jury, made an inflammatory remark, to which an objection was interposed and sus-

tained which aroused the prejudice of the jury, and that the case should be reversed for that reason. The appellant has not preserved in the record any part of the address of counsel.

The only reference in the record to any such matter is in the motion for a new trial. The bill of exceptions failing to show the remark, of which complaint is made, the question is not saved for review. Chicago, Burlington & Quincy R. R. Co. v. Reish, 247 Ill. 350.

The judgment is affirmed.

*Affirmed.*