## George W. Thomas, Plaintiff in Error, v. South Side Elevated Railroad Company et al., Defendants in Error.

### Gen. No. 18,146.

1. **Eminent domain**, § 262*—*how extent of right in easement acquired is measured.* Where an elevated railroad company acquires an easement in land condemned by it for right of way purposes, the extent of its rights in the easement is to be measured by the compensation paid therefor and by the purposes and uses to which it may be legitimately put as and for its right of way.

2. **Eminent domain**, § 262*—*purposes for which elevated railroad company may enter upon its easements.* An elevated railroad company acquiring an easement in land condemned by it for right of way purposes may enter upon every portion of the way at all times for the purpose of inspecting and repairing its elevated structure and the supports, and may perform such work thereon as may be reasonably necessary and expedient to conserve its structural equipment and to provide for the comfort and convenience of its passengers and safety of its employes.

3. **Eminent domain**, § 262*—*when elevated railroad company may enter and pave easement.* An elevated railroad company acquiring an easement in land condemned by it for right of way purposes may enter upon and pave the way, where such pavement is beneficial to the company, without answering in trespass to the owner of the fee.

4. **Elevated railroads**, § 4*—*when instructions as to use of property are not harmful to owner of fee.* Where an elevated railroad company enters upon an easement acquired by condemnation for right of way purposes and paves the way, in trespass against it by the owner of the fee, it appearing that the company had a right to pave, instructions that the presence of the elevated structure and operation constitute possession and the fact that they did not use all the land condemned does not give the owner any right to use it, are not harmful to the plaintiff.

Error to the Superior Court of Cook county; the Hon. George A. Dupuy, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Affirmed. Opinion filed November 21, 1913.

West & Eckhart, for plaintiff in error.

Addison L. Gardner, for defendants in error.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

Mr. Justice Baume delivered the opinion of the court.

This writ of error is prosecuted to review the record of a proceeding in the Superior Court where, in a suit brought by the plaintiff in error, George W. Thomas, against the South Side Elevated Railroad Company and certain of its contractors and servants, to recover damages for an alleged trespass, a trial by jury resulted in a verdict and judgment against plaintiff in error.

The declaration consists of four counts and an additional count. The first count alleges that defendants in error on May 18, 1907, broke and entered the close of plaintiff in error, described as lots 13 and 14 of the resubdivision of lots 31 to 39 inclusive and part of lots 30 and 40 in Thomas' Subdivision of block 87, etc., in the city of Chicago; that defendants in error destroyed a fence of plaintiff in error then standing on said close and that they thereafter destroyed other fences of plaintiff in error which he erected on said premises; that they drove upon said premises and tore up, damaged and spoiled the earth and soil of the said close of plaintiff in error and then and there expelled plaintiff in error from the possession, use and occupation of said close. The second count charges that defendants in error entered upon said close with horses and wagons and then and there wilfully, maliciously and violently drove said horses and wagons close to and at the person of plaintiff in error. The third count alleges that defendants in error drove upon said close of plaintiff in error with horses, wagons, wheelbarrows and other vehicles and with steam rollers and other machines and carried upon said close large quantities of sand, gravel, stone, asphaltum and other materials which were then and there unloaded and deposited upon said close, where they still remain. The fourth count charges that defendants in error entered said close and then and there maliciously, unlawfully and wilfully ran a steam roller with force and violence

along and across the same and towards and at the person of plaintiff in error and thereupon the servants and agents of defendants in error with force and arms violently, rudely, maliciously and wilfully pushed, pulled and shoved plaintiff in error. The additional count alleges that defendants in error entered upon said close and deposited sand, gravel, stone, asphaltum and other materials thereon and then and there constructed thereon a pavement and then and there opened up said close as and for a public highway or alley, and that said close has at all times since been used as a public highway or alley by the public with the leave and consent of defendants in error, but without the consent and against the will of plaintiff in error.

The material facts in the case are not controverted.

The premises where the several trespasses charged in the declaration are alleged to have occurred are a portion of lots 13 and 14 fronting on Twenty-eighth street, located in the middle of the block between Wabash avenue, State street, Twenty-eighth street and Twenty-ninth street, and constitute the right of way of the defendant in error railroad company, acquired by condemnation proceedings wherein said railroad company, or its predecessor railroad company, paid the full market value of the said premises, together with damages to the adjoining property. At the time of the alleged trespasses the defendant in error railroad company was using the said premises for railroad purposes, by having erected columns thereon, upon which it had constructed an elevated railroad whereon railroad trains were being continuously operated by it. By an ordinance of the city of Chicago, passed March 16, 1903, the defendant in error railroad company was required to pave its entire right of way and the north and south alleys adjacent thereto from Twelfth street to Forty-third street. On May 18, 1907, plaintiff in error, being the owner of lots 13 and 14, entered upon the right of way of the defendant in error railroad company and erected thereon temporary

fences as barriers to obstruct entrance to and upon said right of way, and upon the same day when the paving contractors employed by the railroad company attempted with teams to haul stone upon said right of way, plaintiff in error stood in front of the fence and protested, whereupon defendants in error disregarding such protest removed the fence and drove their teams and wagons upon the right of way and deposited stone thereon. On June 12th, following, plaintiff in error erected a more substantial fence to obstruct entrance to and upon said right of way and placed a "No Thoroughfare" sign thereon. This fence was removed on June 15th, following, and was replaced by plaintiff in error on the same day. On June 17th, following, against the protest of plaintiff in error, defendants in error removed the fence and operated one or more steam rollers upon the right of way in performing work necessary to be done in constructing a pavement, which was thereafter completed. On one or more occasions when plaintiff in error attempted to prevent the passage of teams and the operation of steam rollers over the right of way by standing in front of the same he was removed by the servants of defendants in error. Said right of way and the connecting alleys running south and west are frequently used by pedestrians as affording a more convenient means of access to the elevated station on Twenty-ninth street, and said right of way and said alleys are also used by teams. Before a pavement was laid thereon said right of way was littered with ashes, garbage and refuse and was unsightly and unsanitary, but since the pavement has been laid the right of way has been kept clean, is well drained and makes a suitable passageway for pedestrians. It is necessary from time to time for employes of the railroad company to go upon and along the pavement on the right of way for the purpose of inspecting and repairing the elevated structure, and materials for use in the elevated track are more conveniently hauled upon the pavement and

thence raised into place upon the elevated structure. The blowing of dust and dirt upon an unpaved right of way is detrimental to the electrical equipment of the cars, and the pavement served the purpose of preventing the accumulation of such dust and dirt upon the right of way. Prior to the construction of the pavement the moisture from the ground caused the metal structural work upon the right of way to rust and corrode and thereby rendered the same liable to deteriorate more rapidly.

Upon the record as made, plaintiff in error seeks a reversal of the judgment for alleged error by the court in giving two instructions tendered by defendants in error, but primarily plaintiff in error insists that as the railroad company took merely an easement by the condemnation proceedings, and that, as the fee in the lots out of which such easement was carved remained in himself, he was and is entitled to the possession and use of all of the surface of the land constituting said right of way not in actual use by the railroad company for the purpose of supporting the columns upon which the elevated structure and tracks are constructed.

The extent of the right, if any, of plaintiff in error to use such portion of the right of way in question as was not in actual and exclusive use by the railroad company is not concretely presented upon this record. Plaintiff in error did not, so far as this record discloses, seek to use the right of way for any purpose whatsoever, but merely sought to prevent defendants in error from using said right of way for purposes which are entirely consistent with the use by the railroad company of its easement.

Undoubtedly by the condemnation proceedings the defendant in error railroad company acquired only an easement in the portion of lots 13 and 14 condemned for railroad right of way purposes, and the fee in said portion of said lots is vested in plaintiff in error. The extent, however, of the rights of the defendant in er-

ror railroad company in said easement is to be measured by the compensation paid therefor and by the purposes and uses to which it may legitimately be put by the railroad company as and for its railroad right of way. That the railroad company may enter upon every portion of said right of way at any and all times for the purpose of inspecting and repairing its elevated structure and the supports thereof upon said right of way, and may perform such work thereon as may be reasonably necessary and expedient to conserve its structural equipment and to provide for the comfort and convenience of its passengers and the safety of its employes is undeniable. Excluding from consideration the obligation, if any, imposed upon the railroad company by the city ordinance to pave its right of way, which question we do not determine, the uncontroverted evidence shows that the laying of the pavement upon such right of way by the railroad company was a legitimate exercise by it of its rights under its easement.

Among the cases cited and relied upon by plaintiff in error are *Lockie v. Mutual Union Tel. Co.,* 103 Ill. 401; *St. Louis & C. R. Co. v. Postal Tel. Co.,* 173 Ill. 508; and *Eldorado, M. & S. W. R. Co. v. Sims,* 228 Ill. 9. These cases are not in point. The *Lockie* case and the *Postal Tel. Co.* case involved the extent of the right acquired by condemnation for telegraph purposes, and the *Sims* case involved the right of the owner of the fee to mine for coal beneath a railroad right of way acquired by condemnation.

In the *Lockie* case, *supra,* it was held that the only exclusive right of occupancy which the telegraph company acquired by the condemnation proceedings was the occupancy of the land occupied by the poles erected for telegraph purposes.

In the *Postal Telegraph Co.* case, *supra,* it was said (p. 534): "The spaces between the telegraph poles, and over which the wires are strung, are used jointly by the railroad company and the telegraph company,

by the former for such purposes as are appropriate to a railroad right of way, and by the latter in the exercise of its right to the easement already referred to. Inasmuch as the telegraph company does not take the exclusive use of the remainder of the right of way not occupied by the poles, and, inasmuch as the railroad company still continues to use the same, it cannot be said that such remainder is taken by the condemnation proceeding. It is merely damaged to the extent to which the telegraph company has an easement, or the right to enter, for the purpose of constructing and repairing its line. The measure of damages, therefore, suffered by the railroad company, is not the value of the land embraced within the right of way between the poles and under the wires, but the measure of damages is the extent to which the value of the use of such spaces by the railroad company is diminished by the use of the same by the telegraph company for its purposes.''

In *Drainage Commissioners v. Knox,* 237 Ill. 148, which was a proceeding by a drainage district to ascertain the compensation to be paid a land owner for the laying and maintaining of a tile drain, it was said (p. 151): ''Of course, the nature and extent of the interest acquired by the condemnation is to be considered in estimating the compensation to be paid to the owner, but that does not affect the question whether the property is taken or not. In some cases, such as railroad right of way, the right acquired by the petitioner is practically exclusive, and the naked title which is left in the owner is for all practical purposes of no value. In such cases the damages must be assessed at the full market value of the land. In any case the owner is entitled to be paid for such rights of use and enjoyment of his land as are taken from him, and inasmuch as the defendant retains substantial rights in the strip of land, the measure of damages would not be the full market value.''

In *Sexton v. Union Stock Yard & Transit Co.,* 200

Ill. 244, it was said (p. 250): "The nature of the estate and the quantity of title taken from the land owner are not improper for consideration by a jury. (10 Am. & Eng. Ency. of Law, — 2d ed. — 1150.) Where the petitioner takes a perpetual easement to occupy and use the surface of the land, the bare fee remaining in the owner is generally, for all practical purposes, of no value, and in such cases it would not be error for the jury to allow the fair cash market value of the property."

In *Walker v. Illinois Cent. R. Co.*, 215 Ill. 610, where the railroad company acquired an easement for railroad right of way purposes by deed, the Court said (p. 615): "The land contained in the strip was not conveyed to the appellee, but its use. The interest, however, which the appellee acquired in said strip was absolute for the purposes for which it was acquired, so long as it was used for railroad right of way purposes. In *Hazen v. Boston and Maine Railroad Co.*, 2 Gray, 574, it was said (p. 580): 'The right acquired by the corporation, though technically an easement, yet requires for its enjoyment a use of the land permanent in its nature and practically exclusive.' And in *Chicago and Mississippi Railroad Co. v. Patchin*, 16 Ill. 198, this court, on page 202, speaking through Mr. Justice Scates, said: 'I presume the right to the land upon which railroads are built is not strictly analogous to the easement of the public in highways, leaving the fee in the owner of the soil, but is an absolute ownership in fee for railroad purposes.' And in *Illinois Central Railroad Co. v. Godfrey*, 71 Ill. 500, it was held that the right of way was the exclusive property of a railroad company, upon which no unauthorized person had the right to be for any purpose. And in *Jackson v. R. & B. R. R. Co.*, 25 Vt. 150, Mr. Justice Redfield said: 'The railway company must, from the very nature of their operations, in order to the security of their passengers, workmen and the enjoy-

ment of the road, have the right at all times to the exclusive occupancy of the land taken, and to exclude all concurrent occupancy by the former owners in any mode and for any purpose.'

In *Illinois Central Railroad Co. v. Houghton,* 126 Ill. 233, on page 241, where the court was considering a deed very similar to the deed now under consideration, it was said: 'While we are not disposed to hold that the deed from Walker to the plaintiff conveyed to the plaintiff an estate in fee in the right of way, it is clear that it conveyed an estate which, so far as the right of possession for railroad purposes is concerned, had most of the qualities of the fee. The right of possession thereby conveyed was exclusive, and was wholly inconsistent with the subsequent possession of the land, or any part of it, by the grantor or his assigns for purposes of grazing or agriculture, or as a part of the farm to which it originally belonged.' To the same effect is *Illinois Central Railroad Co. v. O'Connor,* 154 Ill. 550.''

The 29th and 39th instructions complained of by plaintiff in error are as follows:

''29.   The court instructs you that the presence of the elevated structure in question, and its supporting columns, on and above the premises in question, as shown by the evidence in this case, and the running of trains over the same at the time of the alleged trespass, as shown by the evidence, constitute an actual and continuing possession by the said railroad company of the premises in question.''

''39.   The court instructs you that the fact that the railroad company does not actually use all the land condemned by it for its right of way, does not give the owner of said land any right to use it.''

As applied to the uncontroverted facts in this case, these instructions could not have harmed plaintiff in error. Indeed, upon the facts established by the evidence the trial court would have been warranted in giving to the jury a peremptory instruction to find defendants in error not guilty.

We perceive no substantial reason for reversing the judgment of the Superior Court and such judgment is, therefore, affirmed.

*Judgment affirmed.*