NOTICE
Decision filed 09/05/19. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2019 IL App (5th) 180403

NO. 5-18-0403

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| KASKASKIA LAND COMPANY, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Fayette County. |
| | ) | |
| v. | ) | No. 17-L-11 |
| | ) | |
| THE VANDALIA LEVEE AND DRAINAGE | ) | |
| DISTRICT, | ) | Honorable |
| | ) | Kevin S. Parker, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Presiding Justice Overstreet and Justice Moore concurred in the judgment and opinion.

**OPINION**

¶ 1    The question in this appeal is whether a cause of action for inverse condemnation is cognizable when a quasi-governmental entity acquires a prescriptive flood easement over private property due to the inaction of previous landowners over a long period of time. In related litigation between the two parties to this appeal, this court held that the defendant, the Vandalia Levee and Drainage District (VLDD), acquired a prescriptive flood easement over an island in the Kaskaskia River, which includes property owned by the plaintiff, the Kaskaskia Land Company, LLC (KLC). The easement arose as a result of previous landowners' failure to maintain the island's levees over a lengthy period of time before KLC acquired any property on the island. KLC filed a petition for inverse condemnation, asserting that it was entitled to just compensation for the "taking" of an

1

interest in its property. The trial court granted VLDD's motion to dismiss, holding that (1) KLC failed to file a counterclaim for inverse condemnation during the protracted litigation between these parties over the existence of the easement and (2) there is no cognizable claim for inverse condemnation based on a prescriptive easement that arose before the owner acquired an interest in the property. KLC appeals, arguing that both of the court's holdings were in error. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3      This case comes to us after a long and complicated history of litigation involving the parties to this appeal as well as additional related parties. VLDD is a levee and drainage district. Levee and drainage districts are considered quasi-public entities. See *Bradbury v. Vandalia Levee & Drainage District*, 236 Ill. 36, 43 (1908). VLDD maintains a system of levees and drains that protect 12,000 acres of farmland near the Kaskaskia River.

¶ 4      KLC owns land on Pecan Island, a small island in the middle of the Kaskaskia River. KLC acquired its interest in Pecan Island property from a business entity that was wholly owned and controlled by Fred Keck, one of the defendants in the original related litigation. KLC is owned and controlled by Patricia Emerick, the widow of Keck's friend and business associate, Tim Emerick. The transfer of Pecan Island property from a Keck-controlled entity to KLC took place while the original litigation involving that property was pending. At that time, KLC was owned and controlled by Tim Emerick and Keck's son, Jon Keck.

¶ 5      Until 1943, Pecan Island was at least partially protected from flooding by a system of levees. However, those levees were damaged in a 1943 flood, after which time, the Pecan Island Levee District was disbanded, and Pecan Island remained subject to regular flooding for a period of more than 40 years.

2

¶ 6     In 1988, Fred Keck began purchasing property on Pecan Island. Soon after he began purchasing the property, Keck began to repair the Pecan Island Levee District's nonfunctioning levees, raise the heights of those levees, and build new levees. At some point, he also began to transfer his ownership interest in his Pecan Island property to various entities, most of which were owned and controlled by Fred and Jon Keck and Tim Emerick, including KLC.

¶ 7     In 2008, VLDD filed a lawsuit against Fred Keck and Parish Holdings, LP. (We note parenthetically that although Keck did have an interest in Parish Holdings, it was the one entity involved in the underlying litigation that was not fully owned and controlled by either the Kecks or Tim Emerick.) However, as the litigation proceeded, additional entities were added as defendants when it was discovered that Keck had transferred interest in his Pecan Island property to those entities.

¶ 8     VLDD alleged in its complaint that Keck's levees raised flood heights upstream from Pecan Island, thereby damaging VLDD's levees. VLDD requested damages and injunctive relief on the basis of three theories. It asserted that the Pecan Island levees (1) constituted a nuisance, (2) violated a prescriptive easement, and (3) violated the civil law of drainage. The trial court explicitly found that before Fred Keck began rebuilding the Pecan Island levees, the island was subject to "regular if not annual flooding." However, it found that none of VLDD's theories were supported by applicable law, and it further found that VLDD failed to prove that the Keck levees caused the damage to its levees. The court therefore entered judgment for Keck and the other defendants.

¶ 9     This court reversed that ruling. We found that VLDD demonstrated both that it had acquired a prescriptive flood easement over Pecan Island and that the defendants' conduct

3

constituted a nuisance. We also found that VLDD demonstrated that the damage to its levees was caused by the Pecan Island levees.

¶ 10    In finding that a prescriptive flood easement was established, we emphasized the evidence that Pecan Island flooded regularly for a period of over 40 years. We noted that for a prescriptive flood easement to arise, the property must flood for a period of 20 years or more. See *Meyers v. Kissner*, 149 Ill. 2d 1, 11 (1992) (explaining that a prescriptive flood easement arises when the property at issue has been subject to adverse and uninterrupted flooding for a period of 20 or more years with the knowledge and acquiescence of the owners).

¶ 11    In finding that the defendants' conduct constituted a nuisance, we emphasized that the defendants had engaged in conduct that was unreasonable. We explained that they "purchased property known to be subject to flooding to use for farming and hunting. They then built or rebuilt levees around the perimeter of Pecan Island without making any attempt to determine whether the levees would adversely impact neighboring properties." *Vandalia Levee & Drainage District v. Keck*, 2012 IL App (5th) 100564-U, ¶ 43. We also noted that they did not comply with a statutory requirement to apply for a permit from the Illinois Department of Natural Resources prior to constructing new levees. See 615 ILCS 5/29a(a) (West 2008). We remanded the matter to the trial court to assess damages and to determine the scope of the injunctive relief to be ordered.

¶ 12    On remand, VLDD filed a motion to add additional parties as defendants, including KLC. The trial court granted the motion. The court subsequently entered an injunction ordering KLC and Parish Holdings to remove portions of the Pecan Island levees. KLC appealed that injunction to this court, arguing that (1) judgment against it was void because it was a necessary party that was not joined as a defendant until after the original trial proceeded to judgment and (2) this court's

finding of a prescriptive easement constituted a "taking" requiring just compensation under the eminent domain provisions of both the state and federal constitutions.

¶ 13　On appeal, we rejected the first of these arguments, finding that (1) KLC's interest was adequately represented by the other defendants in the original litigation and (2) the circumstances surrounding the transfer of Pecan Island property to KLC from a Keck-controlled entity made it virtually impossible for VLDD to have discovered KLC's interest any earlier than it did. We suggested that KLC's eminent domain argument was likewise without merit, noting that we were aware of no cases finding just compensation to be required "in the context of a prescriptive easement found to have come into existence through 20 or more years of adverse use long before the landowner acquired title." *Vandalia Levee & Drainage District v. Keck*, 2015 IL App (5th) 140302-U, ¶ 38. We explained that "[t]his is not surprising given the nature of a prescriptive easement." *Id.* However, we found it inappropriate to address the issue because although KLC raised eminent domain as an affirmative defense in that case, it did not file a counterclaim seeking just compensation. *Id.* ¶ 39.

¶ 14　Thereafter, KLC filed the inverse condemnation petition at issue in this appeal. At the time it did so, the original litigation remained pending before the trial court for a determination of the amount of damages to be awarded. In KLC's inverse condemnation petition, it argued that this court's determination that VLDD had acquired a prescriptive flood easement over Pecan Island property constituted a "taking" for which KLC was entitled to just compensation.

¶ 15　VLDD filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2016)). VLDD argued that KLC's complaint should be dismissed because the issues raised by KLC were involved in another pending action between the same parties. See *id.* § 2-619(a)(3). It further argued that because the operative facts had already been

determined adversely to KLC in the original litigation, its claim for inverse condemnation was barred by principles of *res judicata*. See *id.* § 2-619(a)(4). VLDD also argued that KLC's claim was barred by other affirmative matters. See *id.* § 2-619(a)(9). VLDD noted that the prescriptive flood easement came into existence long before KLC acquired property on Pecan Island. It also alleged that the properties were subject to a federal flow easement. That easement was recorded in 1965, and the owners of the affected property were paid just compensation from the federal government at that time. A copy of the recorded easement was attached to the motion.

¶ 16　Although VLDD did not cite section 2-615, it also argued that KLC's complaint was legally insufficient. See *id.* § 2-615. More specifically, VLDD argued that a prescriptive easement is not a "taking" for which just compensation is required. It noted that KLC's claim for inverse compensation was akin to a "regulatory taking" and argued that such claims are not actionable if the regulation at issue serves a legitimate governmental interest and does not deprive the owner of all economically viable use of the land. See *Byron Dragway, Inc. v. County of Ogle*, 326 Ill. App. 3d 70, 73 (2001) (citing *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 834 (1987)).

¶ 17　The court granted the motion to dismiss in a written order. It took judicial notice of the entire record in the still-pending original litigation, including this court's decisions in both previous appeals. The court found that KLC's petition should be dismissed for two reasons. First, the court noted that the "primary purpose" of a dismissal pursuant to section 2-619(a)(3) (735 ILCS 5/2-619(a)(3) (West 2016)) "is to avoid duplicative proceedings." The court acknowledged that counterclaims are generally permissive but found that dismissal was warranted under this provision because KLC had chosen not to bring a counterclaim during more than nine years of litigation between the parties over related issues in VLDD's suit. Second, the court found no authority to support a cause of action for inverse condemnation when a prescriptive easement arises

6

through 20 or more years of adverse public use before the current owner acquired any interest in the property. The court therefore dismissed KLC's complaint with prejudice. This appeal followed.

¶ 18                                II. ANALYSIS

¶ 19    On appeal from a trial court's ruling on a motion to dismiss, we assume that all of the well-pled allegations in the complaint are true. *Ray v. Beussink & Hickam*, *P.C.*, 2018 IL App (5th) 170274, ¶ 12. A motion to dismiss should only be granted if there is no set of facts that can be proven under which the plaintiff is entitled to relief. *In re Marriage of Buck*, 318 Ill. App. 3d 489, 493 (2000). In general, we review *de novo* a trial court's ruling on a motion to dismiss. *Schacht v. Lome*, 2016 IL App (1st) 141931, ¶ 33. However, the more deferential abuse-of-discretion standard applies to a court's decision on whether to dismiss a petition on the basis of section 2-619(a)(3). *Midas International Corp. v. Mesa, S.p.A.*, 2013 IL App (1st) 122048, ¶ 12.

¶ 20    KLC presents two issues for our review. First, it contends that the court abused its discretion in dismissing the complaint based on KLC's failure to raise the issue of eminent domain as a counterclaim in the original litigation. KLC correctly notes that counterclaims are permissive, as the court acknowledged. See 735 ILCS 5/2-608(a) (West 2016); *Davis v. Lowery*, 228 Ill. App. 3d 660, 662 (1992). KLC also points out that it could not have filed a counterclaim in the original litigation until after it was added as a defendant in 2013. It therefore argues that the court abused its discretion in dismissing the petition on this basis. Second, KLC argues that the court erred in holding that its inverse condemnation claim was not cognizable. We disagree with KLC's second contention. Because our conclusion on this matter is dispositive, we need not address KLC's other arguments.

¶ 21    Both the United States Constitution and the Illinois Constitution give governmental entities the power to take property for public use through eminent domain. U.S. Const., amend. V; Ill.

Const. 1970, art. I, § 15. However, the governmental entity must pay just compensation to the property owner. *City of Des Plaines v. Redella*, 365 Ill. App. 3d 68, 74 (2006), *overruled on other grounds by Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶¶ 29-40. Although most eminent domain cases involve takings of an ownership interest in property, an easement is also a type of interest in property. Specifically, it is a nonpossessory interest in the property of another. *Pobuda*, 2014 IL 116717, ¶ 28. Thus, while a governmental entity can claim an express easement through eminent domain, it must pay just compensation for that easement. *Drainage Commissioners of Drainage District No. 8 v. Knox*, 237 Ill. 148, 151 (1908); see also *Peters v. Milks Grove Special Drainage District No. 1*, 243 Ill. App. 3d 14, 18 (1993) (noting the existence of an express easement for which a drainage district paid just compensation to prior property owners).

¶ 22     Inverse condemnation is a cause of action that allows a landowner to recover compensation for the taking of property interests in circumstances where the governmental entity involved has not initiated eminent domain proceedings. *Byron Dragway*, 326 Ill. App. 3d at 73. Inverse condemnation cases generally involve what are known as "regulatory takings." See *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992); *Byron Dragway*, 326 Ill. App. 3d at 73-74. A regulatory taking can occur in one of two ways. If a governmental regulation requires the property owner to allow a physical incursion onto his or her property, this will be considered a taking for which the property owner must be compensated. A regulatory taking will also occur if a regulation deprives the owner of all economically beneficial use of the property. *Lucas*, 505 U.S. at 1015. However, as we will discuss later, compensation is *not* required if a regulation proscribes land uses that "were not part of [the owner's] title to begin with." *Id.* at 1027.

8

¶ 23    In resolving the question before us in this appeal, it is important to emphasize the nature of the prescriptive flood easement involved in this case. A prescriptive flood easement arises when (1) the property at issue has flooded for a period of 20 years or more, (2) the flooding is adverse and uninterrupted, and (3) the flooding takes place with the knowledge and acquiescence of the property owners. *Meyers*, 149 Ill. 2d at 11. Here, the regular flooding that took place for a period well in excess of 20 years was caused by the natural flow of the Kaskaskia River when unimpeded by perimeter levees on Pecan Island. VLDD does not claim a right to enter onto KLC's property to maintain levees or drains, and it does not claim a right to divert water to Pecan Island from the lands it protects. It claims only the right to expect that Pecan Island property owners will continue the long-established practice of not interfering with the natural flow of floodwater from the Kaskaskia River.

¶ 24    In this regard, we believe this case is similar to cases involving prescriptive public easements under the Illinois Highway Code. Under section 2-202 of the Highway Code, a private road becomes a public highway if it has been used by the public for a period of 15 years. *Redella*, 365 Ill. App. 3d at 75 (citing 605 ILCS 5/2-202 (West 2002)). The effect of this statute is to create a prescriptive easement for the public to use the road. *Id.* Although the statute requires only a 15-year period of public use, the requirements necessary to establish a public highway easement by prescription are otherwise identical to the requirements needed to establish any other prescriptive easement. *Id.*

¶ 25    In *Redella*, the City of Des Plaines (City) filed a declaratory judgment action seeking a declaration that Trailside Lane, a private road on land owned by the defendants, had become a public highway pursuant to this provision. *Id.* at 71. The defendants filed a counterclaim requesting a declaration to the contrary. *Id.* In the alternative, the defendants requested that the trial court

9

declare that the City must pay them just compensation for the fair market value of their ownership interests in the road. *Id.* at 72. The City filed a motion for summary judgment, which the trial court granted. *Id.*

¶ 26    On appeal, the defendants argued that the relevant statute "may not be interpreted to allow the seizure of Trailside Lane by the City, a government entity, without compensation to the owners of the easement property." *Id.* at 74. The appeals court first rejected the defendants' claim that the declaration of a public highway constituted a seizure of their land. The court explained that "the trial court's ruling granted the City only a prescriptive easement over the road, not fee title to the easement property itself." *Id.* The court then addressed the question before us in this case— whether the acquisition of a public prescriptive easement constitutes a "taking" under the state and federal constitutions. *Id.*

¶ 27    In holding that the acquisition of the public highway easement at issue there did not constitute a taking, the *Redella* court found two out-of-state cases persuasive. It noted that the New Mexico Supreme Court held that " '[t]he general rule is that acquisition of an easement by prescription is not a taking and does not require compensation to the landowner.' " *Id.* (quoting *Algermissen v. Sutin*, 61 P.3d 176, 185 (N.M. 2002)). The court also considered a Colorado Supreme Court case involving the declaration of a public highway under a statute similar to the one at issue in *Redella*. In summing up the Colorado court's rationale, the *Redella* court explained that the effect of the statute "was simply to require an owner desirous of retaining his interest in the private road to prohibit continuous public use." *Id.* at 75 (citing *Board of County Commissioners of Saguache County v. Flickinger*, 687 P.2d 975, 984-85 (Colo. 1984)). The Colorado court concluded that because the easement arose due to the landowners' failure to do so for a period of 20 years, application of the statute " 'did not constitute a governmental taking for

10

which compensation was required.' " *Id.* (quoting *Flickinger*, 687 P.2d at 984-85). The *Redella* court agreed with this reasoning and held that just compensation was not required in the case before it.

¶ 28    We too find this reasoning persuasive. In the case before us, a prescriptive flood easement arose because Pecan Island landowners failed to maintain the perimeter levees for a period well in excess of 20 years. In so doing, they essentially granted a prescriptive flood easement to VLDD and the property owners whose land VLDD's drains and levees protect. In other words, a prescriptive easement is a granting, not a taking. We do not believe compensation is required in light of these principles.

¶ 29    It is also important to emphasize the time at which the prescriptive flood easement arose. The trial court in the original litigation explicitly found that Pecan Island was subject to "regular if not annual" flooding once its perimeter levees became nonfunctional. There is no dispute that the levees became nonfunctional in 1943. Thus, the 20 years of flooding needed to establish the easement passed, and the easement came into existence in the mid-1960s. KLC acquired an interest in its Pecan Island property in 2010, long after the easement came into existence. Governmental entities are not required to pay just compensation to assert a preexisting easement. *Lucas*, 505 U.S. at 1028-29.

¶ 30    KLC's claim that enforcement of the prescriptive flood easement constitutes a "regulatory taking" is likewise meritless. The claim is defeated by three additional factors that limited the right of Pecan Island property owners to build and maintain levees before KLC acquired an interest in its property. First, as this court has recognized previously, building and maintaining the Pecan Island perimeter levees constituted a nuisance. Second, Keck built new levees without first obtaining a permit from the Illinois Department of Natural Resources, which violates the Rivers,

11

Lakes, and Streams Act. See 615 ILCS 5/29a(a) (West 2008). Third, the property is subject to a recorded federal flow easement that requires approval of the Army Corps of Engineers before new levee construction can occur.

¶ 31 Regulatory action does not constitute a regulatory taking and does not require just compensation if it merely prohibits a use of the property that was already impermissible under existing law, including nuisance principles. See *Lucas*, 505 U.S. at 1029-30. Here, the prescriptive easement recognized by this court does no more than "expressly prohibit[ ]" uses of the Pecan Island property that were "*always* unlawful." (Emphasis in original.) *Id.* at 1030. Because these restrictions were in place long before KLC acquired its property, the prescriptive easement does not prohibit any use of the property that was not already impermissible when KLC acquired the property. As such, the easement does not constitute a regulatory taking. Because the easement is neither an actual taking nor a regulatory taking, VLDD is not required to pay compensation. We therefore find no error in the court's decision to dismiss KLC's petition.

¶ 32                                III. CONCLUSION

¶ 33 For the foregoing reasons, we affirm the order of the trial court dismissing KLC's petition for inverse condemnation.

¶ 34 Affirmed.

12

2019 IL App (5th) 180403

NO. 5-18-0403

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| KASKASKIA LAND COMPANY, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Fayette County. |
| | ) | |
| v. | ) | No. 17-L-11 |
| | ) | |
| THE VANDALIA LEVEE AND DRAINAGE | ) | |
| DISTRICT, | ) | Honorable |
| | ) | Kevin S. Parker, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

**Opinion Filed:**          September 5, 2019

_____

**Justices:**          Honorable Melissa A. Chapman, J.

Honorable David K. Overstreet, P.J., and
Honorable James R. Moore, J.
Concur

_____

**Attorney**          Ronald E. Osman, Ronald E. Osman & Associates, Ltd., 1602 West
**for**          Kimmel, P.O. Box 939, Marion, IL 62959
**Appellant**

_____

**Attorneys**          Penni S. Livingston, Livingston Law Firm, 690 Pleasant Ridge Road,
**for**          Fairview Heights, IL 62208; Emily E. Scott, Scott & Fiello Schwartz,
**Appellee**          LLC, 4509 N. Illinois Street, Suite 4, Swansea, IL 62226

_____