# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1186

No. 16-1187

_____

City of Ozark, Arkansas, a municipal corporation

*Plaintiff - Appellee*

v.

Union Pacific Railroad Company

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Western District of Arkansas - Ft. Smith

_____

Submitted: September 21, 2016
Filed: December 19, 2016

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

The City of Ozark, Arkansas sued Union Pacific Railroad Company in state court seeking an order requiring Union Pacific to restore a public at-grade rail crossing or, alternatively, allowing the City to condemn Union Pacific's land across

that public crossing. Union Pacific removed the action,[1] and the parties filed cross motions for summary judgment. The district court granted the City summary judgment and a permanent injunction, rejecting Union Pacific's contention that the Interstate Commerce Commission Termination Act ("ICCTA") grants the Surface Transportation Board ("STB") exclusive jurisdiction over the City's claims. "[P]reemption is not at issue," the court ruled, because the crossing was unlawfully closed. City of Ozark, Ark. v. Union Pac. R.R., 149 F. Supp. 3d 1107, 1116 (W.D. Ark. 2015).

Union Pacific appeals this preemption ruling, an issue we review *de novo*. See Keller v. City of Fremont, 719 F.3d 931, 937 (8th Cir. 2013), cert. denied, 131 S. Ct. 2140 (2014). We conclude that ICCTA's express preemption provision, 49 U.S.C. § 10501(b), applies to this dispute. We further conclude Union Pacific has made a strong showing that the remedy the City seeks would "impede rail operations or pose undue safety risks," the STB's governing preemption standard. See Maumee & W. R.R. & RMW Ventures, LLC, Fin. Dkt. No. 34354, 2004 WL 395835, at *2 (S.T.B. Mar. 2, 2004). We therefore remand to the district court with instructions to rule on Union Pacific's motion to dismiss the City's amended complaint for lack of jurisdiction unless the City obtains a ruling from the STB that it lacks or declines exclusive jurisdiction over this dispute.

## I.

The City of Ozark sits on a bend in the Arkansas River. Union Pacific owns and operates railroad tracks on a right of way running east-west between the City and the river, a mainline track and a long side track used to store rail cars and to place

---

[1]Whether the action was removable is not an issue on appeal, and we do not address it. See generally Elam v. K.C. So. Ry., 635 F.3d 796, 806-08 (5th Cir. 2011).

local trains that "meet" a train on the main track. Before 1970, an at-grade crossing ("the Crossing") allowed Ozark residents to access a small neighborhood south of the tracks that included several houses, a horse barn, a lumber company, and the City's dump. In the late 1960's, most of this neighborhood was flooded when the Army Corps of Engineers constructed the McClellan-Kerr Arkansas River Navigation System. This reduced use of the area south of the tracks to sporadic recreation, but some residents continued to use the Crossing, and Union Pacific locomotives continued to sound their horns when approaching it. By 2001, at least one Ozark resident had complained about the train whistles. Ozark's Mayor contacted Union Pacific, which agreed -- no doubt readily -- to remove the Crossing at its own expense. The Mayor informed Ozark City Council members. No member objected, but the Council did not pass an ordinance vacating a public street. See Ark. Code Ann. § 14-301-304(a) (1987). Union Pacific closed the Crossing in 2001.

Some years later, the City formulated plans to develop land along the Arkansas River, including construction of a marina or dock to encourage boaters to stop in Ozark, and recreational trails near and along the river. The City urged Union Pacific to reinstall the Crossing at its expense. When Union Pacific refused, the City filed this action alleging that Union Pacific must restore the public Crossing it had unlawfully closed by not properly vacating a public street.

The City moved for partial summary judgment, seeking (i) a declaratory judgment that the Crossing was a public easement and Union Pacific violated Ark. Code Ann. § 14-301-301(a) by closing the Crossing without the ordinance required by § 14-301-304(a); (ii) an order requiring Union Pacific to reinstall the Crossing; and (iii) a permanent injunction barring Union Pacific from interfering with the City's use of the Crossing. See Ozark, 149 F. Supp. 3d at 1111. Union Pacific moved for summary judgment, arguing that ICCTA preempts the City's state law claims and asserting the affirmative defenses of laches, waiver, and estoppel. Both parties

submitted extensive evidence regarding the impact of restoring the Crossing on railroad operations and safety, as well as argument on the preemption issue.

After a lengthy summary judgment hearing, the district court granted judgment in the City's favor. The court first ruled that the Crossing was a public easement over Union Pacific's tracks and that Union Pacific violated Ark. Code Ann. § 14-301-301(a) by removing the Crossing without an ordinance vacating the public street as required by § 14-301-304(a). See id. at 1112-15. The court rejected Union Pacific's ICCTA preemption defense, explaining:

> At first blush, it may appear that the ICCTA is germane here, as reopening the Crossing to the public would certainly impact rail operations in some manner, due in part to Union Pacific's use of a side track it installed at the area of the Crossing after 2001. However, preemption is not at issue because the Crossing was not closed legally to begin with. . . . Union Pacific's lack of legal authority to close the Crossing is the controlling factor.

Id. at 1116. The court ordered Union Pacific to restore the Crossing "to its pre-2001 condition" at Union Pacific's expense. Id. at 1120. It concluded the City's alternative condemnation claim was moot. Id. at 1111 n.2.

On appeal, Union Pacific argues that we must remand because the district court erred when it failed to apply the governing, fact-intensive ICCTA preemption test.

## II.

Congress enacted ICCTA in 1995, replacing the Interstate Commerce Commission with the STB. "ICCTA repealed much of the economic regulation previously conducted by the ICC and by state railroad regulators working in

-4-

conjunction with the ICC." Iowa, Chicago & E. R.R. v. Washington Cty., 384 F.3d 557, 559 (8th Cir. 2004). To further the goal of limited state regulation of interstate rail transportation, Congress included a broadly worded preemption provision, codified at 49 U.S.C. § 10501(b):

> (b) The jurisdiction of the [STB] over --
>         (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>         (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
> is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

Union Pacific is a "rail carrier." See § 10102(5). "Transportation" is broadly defined to include "property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail." § 10102(9).

There has been extensive litigation before the STB and state and federal courts addressing the scope of ICCTA's preemption provision. The STB has held that § 10501(b) applies to three types of state statutes, regulations, and judicial remedies. First, "any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations" is preempted. Second, "there can be no state or local regulation of matters directly regulated by the [STB] -- such as the construction, operation, and abandonment of rail lines." These two types of state regulation are "facially" or categorically preempted. Third, "[f]or state or local actions that are not facially preempted, the section

-5-

10501(b) preemption analysis requires a factual assessment of whether that action would have the effect of preventing or unreasonably interfering with railroad transportation." CSX Transp., Inc., Fin. Dkt. No. 34662, 2005 WL 1024490, at \*2-3 (S.T.B. May 3, 2005). The STB calls this third category "as-applied" preemption, but it is part of the agency's interpretation of the express preemption statute. This court and other circuits have approved the STB's approach as a reasonable, permissible interpretation of 49 U.S.C. § 10501(b). See Tubbs v. Surface Transp. Bd., 812 F.3d 1141, 1144-45 (8th Cir. 2015) (collecting cases).

Railroad crossing disputes are not uncommon; they arise in a variety of factual and legal contexts. The STB applies its as-applied standard to most crossing disputes, reflecting a pragmatic approach to the question whether it has exclusive jurisdiction over a particular dispute:

> [R]outine, non-conflicting uses, such as non-exclusive easements for at-grade road crossings, wire crossings, sewer crossings, etc., are not preempted so long as they would not impede rail operations or pose undue safety risks. . . . [C]ourts can, and regularly do (sometimes with input from the [STB] through referral) make determinations as to whether proposed eminent domain actions would impermissibly interfere with railroad operations.

Maumee, 2004 WL 395835, at \*2. Courts agree that, although all railroad crossings affect rail transportation to some extent, "preemption claims in routine crossing cases fall into the category of *as-applied* preemption challenges." Franks Inv. Co. LLC v. Union Pac. R.R., 593 F.3d 404, 413 (5th Cir. 2010) (en banc). Applying this analysis, when a state or federal court determines that the railroad has made no showing that a remedy allowing use of a particular crossing would unreasonably interfere with rail transportation, then the court may proceed to resolve the crossing dispute applying relevant state law contract, property, or condemnation principles. See id. at 415; PCS

Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 221-23 (4th Cir. 2009). However, if the court concludes that a proposed crossing easement would unreasonably interfere, then § 10501(b) grants the STB exclusive jurisdiction, and the lawsuit or condemnation proceeding must be dismissed or enjoined for lack of jurisdiction. See Union Pac. R.R. v. Chicago Transit Auth., 647 F.3d 675, 683 (7th Cir. 2011); Anderson v. BNSF Ry., 291 S.W.3d 586, 594 (Ark. 2009); accord Harris Cty. v. Union Pac. R.R., 807 F. Supp. 2d 624, 632 (S.D. Tex. 2011); Tri-City R.R., Dkt. No. FD 35915, 2016 WL 5904750, at *9 (S.T.B. Sept. 12, 2016).

The district court concluded that ICCTA preemption does not apply -- "is not at issue" -- in this case, because the City seeks to restore a rail crossing that was closed in violation of state law. Neither the court nor the City cite authority supporting this conclusion. We emphatically disagree. Whether § 10501(b)(1) applies to preempt a state-law claim or remedy is a question of federal law that turns on congressional intent to broadly preempt state laws and remedies that interfere with "transportation by rail carriers." The focus of the STB's exclusive jurisdiction is interstate rail transportation, at present and in the future. City of Lincoln v. Surface Transp. Bd., 414 F.3d 858, 861-62 (8th Cir. 2005); Tri-City, 2016 WL 5904750, at *7-8. ICCTA preemption does not depend upon the source of a state law claim. The claim is preempted if the requested remedy will, in the words of the STB's governing test, "impede rail operations or pose undue safety risks." Whether that interference with rail transportation arises from a public or private easement, or from opening a new crossing or restoring an abandoned crossing, is irrelevant to the federal preemption analysis. Thus, an order requiring Union Pacific to restore the Crossing "to its pre-2001 condition" because it was closed in violation of state law more than fifteen years ago is preempted if that restoration will unreasonably interfere with rail operations as they are conducted today or are likely to be conducted in the future. For these reasons, we agree with Union Pacific that the district court's order must be

reversed and the case remanded for a determination whether this crossing dispute is within the exclusive jurisdiction of the STB.

## III.

As we have noted, the STB has encouraged courts to make the determination that a grade crossing dispute involves a "routine non-conflicting use" that is not preempted, in which case the court may proceed to resolve the crossing dispute based on applicable state law, as in Mid-Am. Locomotive & Car Repair, Inc., Fin. Dkt. No. 34599, 2005 WL 1326958, at *4 (S.T.B. Jun. 6, 2005). But in many cases, one or more of the parties involved in disputes involving crossings and other arguably non-conflicting uses have petitioned the STB for an order declaring the agency's position on the preemption issue, and the agency has conducted Declaratory Order proceedings when appropriate. For example, in Wichita Terminal Ass'n, BNSF Ry. & Union Pac. R.R., Dkt. No. FD 35765, 2015 WL 3875937, at *2 (S.T.B. Jun. 22, 2015), the state trial court ordered the petitioning railroads to construct a crossing at a particular site, and the appellate court remanded, instructing the trial court to direct the railroads to petition the STB "to resolve any issues concerning the STB's jurisdiction." After receiving evidence and arguments, the STB ruled that "any Kansas court order requiring a crossing at [that site] is federally preempted because it would unreasonably burden or interfere with interstate commerce." Id. at *6. However, as an alternative to preempting any permanent crossing, the railroads had urged the STB to find that a current temporary crossing at another location along the interchange tracks was acceptable for a permanent crossing. On this issue, the STB ruled:

> [W]e do not conclude that any crossing over the [interchange tracks] necessarily would be preempted. . . . [C]rossing disputes are generally subject to state and local law as long as the crossing location will not unreasonably interfere with railroad operations. Based on the current

record, it does not appear that a court-ordered crossing at the location of the temporary crossing . . . would have that same effect on interstate railroad operations. It would be reasonable for a state court, applying state law, to address those issues in light of the preemption standards discussed in this decision. Id. at *8, citing Maumee, 2004 WL 395835.

In this case, in support of its motion for summary judgment, Union Pacific submitted extensive evidence and expert opinion testimony showing that restoration of the Crossing would have significant adverse effects on current rail operations, and would pose significant safety risks to Union Pacific employees; to those traversing the Crossing, which sits on a curve in the main line track where there are limited sight lines; and to those using recreational trails on a narrow strip of land between the tracks and the river, risks that would create a danger of disastrous derailments of high-speed trains that often transport hazardous materials. The City countered with an expert who opined that the reopened Crossing "causes no more safety concerns to railroad employees or the general public than those experienced in any other small town with low volume vehicular traffic."

Here, Union Pacific has presented concrete evidence that reopening this specific Crossing would "impede rail operations or pose undue safety risks," evidence it failed to marshal in Franks, 593 F.3d at 415. On this record, it appears that an order reopening the Crossing is within the STB's exclusive jurisdiction under 49 U.S.C. § 10501(b). But as the STB's decision in Wichita Terminal illustrates, if presented the preemption issue the agency could determine that *any* order restoring this Crossing is preempted, or that some accommodation of the parties' interests may be compatible with sound rail transportation, in which case state law rights and duties would come into play. Cf. Adrian & Blissfield R.R. v. Vill. of Blissfield, 550 F.3d 533, 542 (6th Cir. 2008) (whether railroad must pay for construction of non-interfering sidewalks a matter of state law). In these circumstances, it would be appropriate for the district court to defer entry of a final judicial determination

whether the City's claims are preempted if the City requests an opportunity to petition the STB for a declaratory order resolving the issue of its exclusive jurisdiction. <u>See</u> <u>Wichita Term. Ass'n v. F.Y.G. Inv., Inc.</u>, 303 P.3d 13, 22-23 (Kan. Ct. App. 2013); <u>City of Creede, Co.</u>, Fin. Dkt. No. 34376, 2005 WL 1024483 (S.T.B. May 3, 2005).

Accordingly, the Judgment of the district court is reversed, the permanent injunction is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

———————————————————