2022 IL App (2d) 210454-U
No. 2-21-0454
Order filed March 21, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE CITY OF NORTH CHICAGO, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 19-ED-20 |
| | ) | |
| 2ND & MAIN, LLC, and UNKNOWN | ) | |
| OWNERS AND NON-RECORD | ) | |
| CLAIMANTS, | ) | Honorable |
| | ) | Joseph V. Salvi, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices McLaren and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Trial court did not err in granting defendant's summary judgment motion. However, due to the court's implicit preemption finding, we reverse in part, vacate the remedy section of the court's judgment, and remand.

¶ 2    Plaintiff, the City of North Chicago, appeals the trial court's decision granting defendant, 2nd & Main, LLC, partial summary judgment. We reverse in part, vacate the remedy section of the court's judgment, and remand.

¶ 3                                I. BACKGROUND

¶ 4                                A. Complaint

¶ 5     In June 2019, plaintiff filed a condemnation complaint, seeking to acquire through eminent domain an easement across defendant's property for the public purpose of operating an existing water main. Plaintiff alleged that the water main had existed for more than 50 years, was an integral part of its water system, and would be difficult and expensive to remove. The easement would run along the water line and be around 20-feet wide. According to plaintiff, its good-faith attempt to negotiate an easement purchase from defendant was unsuccessful, in part because the parties were unable to agree upon just compensation.[1] The complaint provided the legal description of the parcel, which includes a railway line, as well as the easement plaintiff sought.

---

[1] According to plaintiff's opening brief, the water main was installed in 1961, but plaintiff's attorney never recorded an easement for it. The water main has since operated continually, and plaintiff asserts that no prior property owner has objected to plaintiff's operation of the water main without an easement. When defendant bought the property in 2014, plaintiff attempted to purchase an easement for the water main, but those negotiations were unsuccessful. Accordingly, in 2017, defendant initiated an inverse condemnation proceeding. See, *e.g.*, *Kaskaskia Land Co., LLC v. Vandalia Levee & Drainage District*, 2019 IL App (5th) 180403, ¶ 22 ("Inverse condemnation is a cause of action that allows a landowner to recover compensation for the taking of property interests in circumstances where the governmental entity involved has not initiated eminent domain proceedings."). As plaintiff determined that it had no viable affirmative defenses, it admitted liability, and the court ordered plaintiff to commence condemnation proceedings, which it did in 2019. As such, it is the court's ruling on defendant's partial summary judgment motion concerning plaintiff's 2019 complaint that gives rise to this appeal. (We note that no claims or arguments concerning, for example, prescriptive easements, constructive notice, or unrecorded

¶ 6    In its answer, defendant asserted that plaintiff's right to eminent domain was barred by affirmative matter because, to the extent condemnation would interfere with railway transportation, federal law preempted plaintiff's cause of action. Specifically, defendant noted that the Interstate Commerce Commission Termination Act of 1995 (ICCTA) (49 U.S.C. § 10101 *et seq.* (1995))), grants the Surface Transportation Board (Board) exclusive jurisdiction over transportation by rail carriers, including the construction and operation of spurs or side tracks, and preempts state law. See 49 U.S.C. § 10501(b). Defendant explained that, on March 6, 2017, it filed with the Board a notice of exemption (see 49 C.F.R. §1150.31), and, on March 22, 2017, the Board issued an exemption, effective April 5, 2017. Accordingly, defendant prayed that any relief provided to plaintiff be limited because condemnation could not interfere with railroad operations. In addition to its affirmative defense, defendant filed a counterclaim, alleging that, where plaintiff had installed a 24-inch water main on the property without having obtained an easement or other rights to do so, it committed trespass.

¶ 7                    B. Summary Judgment Motion

¶ 8    Defendant later moved for partial summary judgment. Defendant noted that there was no dispute that, in the 1960's and without obtaining an easement, plaintiff constructed a water main on what is now defendant's property. However, defendant noted, the property is unique in that it is a railroad, which limits plaintiff's powers to condemn the property through eminent domain. Specifically, defendant argued that federal preemption applied, such that plaintiff's condemnation action could proceed only to the extent that it did not interfere with defendant's actual or proposed operations as a railroad. Defendant noted that it planned to place additional rail spurs on the

_____

easements being binding on subsequent purchasers, are raised).

property, and to use the site, including the portion that plaintiff sought to condemn, for railroad access and as a storage facility for shipping containers. Defendant has leased the premises to Hussey Terminal Railroad Company (Hussey) for those purposes. Accordingly, defendant argued that the water main as currently constructed interferes with railroad operations because the existing 24-inch diameter, pre-stressed, concrete cylinder pipe is not constructed to support railroad loads and is not built to railroad standards. Rather, to construct a water main under a railroad, defendant explained, a carrier pipe is first installed, a concrete pipe is placed within the carrier pipe, and it is then filled with sand. This process distributes the load from the railroad tracks onto the carrier pipe, rather than the water pipe. Defendant's expert, Peter Kolb, opined that the existing water main is "not sufficiently constructed for the purpose of supporting railroad loadings and does not meet railroad criteria for utility crossings." Further, Kolb opined, and defendant alleged, that, "[t]he existing water main renders [defendant's] property unusable for railroad purposes in the area over and north of the existing water main."

¶ 9    Defendant acknowledged that, to the extent it did *not* interfere with railroad operations, plaintiff's condemnation action was not preempted. As such, defendant explained, it was moving for only partial summary judgment, requesting that the court fashion a remedy such that any allowed taking not interfere with railroad operations. Specifically, defendant requested an order that, if a judgment for condemnation entered, plaintiff (1) must replace the existing water main with one that meets current railroad standards; and (2) after the water main is replaced, return the property to the condition that existed prior to the replacement. Defendant attached to its summary judgment motion an affidavit from one of its managers, Phil Dahl; the application for and exemption it had received from the Board; the lease agreement, dated August 10, 2017, with Hussey; drawings of the existing water main prepared by plaintiff's engineers; the deposition of

plaintiff's former engineer, Frank Furlan; and an affidavit and report prepared by civil engineer Kolb.

¶ 10    In response, plaintiff argued that whether the existing water main interferes with defendant's use of the property as a railroad was a disputed issue of material fact.  Specifically, plaintiff noted that defendant's motion was predicated on the notion that the existing water main interferes with its ability to construct rail spurs on the property.  Plaintiff disputed that claim, asserting that its expert, Devin Moose, had opined that the existing rail spur on the property can operate without changes to the water main, as the water main does not run beneath that spur, and that the northern portion of defendant's property can be used without modification to the water main.  Further, plaintiff continued, defendant's future use of the property for railroad purposes was also a question of material fact, as defendant had not established that plans for "significant" railroad use as a railroad hub or for storing shipping containers was likely or economically viable. Plaintiff did not dispute that defendant had leased the property to Hussey.  However, plaintiff's appraisal expert, P. Barton DeLacy, opined that the Board's exemption did not alter the value of the property, which is located in a blighted area with low levels of economic activity, and, therefore, there was no likelihood the property could be used for storing shipping containers, as a railroad hub, or for railroad access.  Finally, plaintiff argued that defendant had not established that it was entitled to the summary relief it was seeking, as it did not explain why the specifications presented on certain drawings (*i.e.*, those pertaining to a water main running under a railway line) would be the appropriate standard for constructing a water main for the railroad purposes defendant was proposing (*i.e.*, such as where the water line intersects merely a rail spur).  Plaintiff concluded that there was simply no basis for the court to order it to replace the water main to certain standards.

In support of its response, plaintiff submitted Moose's affidavit and report, DeLacy's affidavit and report, and Peter Kolb's April 20, 2021, deposition.

¶ 11 In reply, defendant pointed out that, contrary to its representation, plaintiff's expert did *not* opine that the existing pipe did not interfere with railroad operations; rather, Moose's opinion, in fact, stated that tracks could *not* be laid on the northern portion of the property where the pipe exists. Not being able to place tracks on the northern part of the property, defendant argued, is an interference. Further, it noted that questioning the value of the property as a railroad is not responsive to the undisputed fact that defendant plans to use it as a railroad.

"[Defendant] does not make the claim that the property will 'be used as a railroad hub,' whatever that means in this context. [Defendant] only claims that the [p]roperty has already been recognized by the Surface Transportation Board as a railroad property and that [defendant] has plans to use it as such. A railway track to a warehouse is just as preempted under [f]ederal [l]aw as a 'railroad hub.' [Plaintiff] cites no authority for the proposition that the economic value or utility of a property is a factor in determining whether a condemnation is preempted. It is not a factor stated in the statute. Thus, an unprofitable railroad is just as preempted as a profitable one."

Defendant argued that plaintiff's position is that the property should both be condemned and that it should not have to fortify the existing pipe. However, it is undisputed that, unless the existing pipe is fortified, railroad tracks will not be able to be placed on the northern part of the property and the maintenance of an unfortified pipe will interfere with railroad operations. As such, defendant concluded, the court should find that, for plaintiff to succeed in its condemnation action, it must fortify the pipe so that it does not interfere with railroad operations.

¶ 12                              C. Hearing and Trial Court's Ruling

¶ 13    On July 13, 2021, the trial court held a hearing on defendant's motion. Defense counsel showed the trial court the property's survey, pointing out where the water main runs across the north end of the property, and further noted that two railroads, Union Pacific Railroad Company (Union Pacific) and Canadian National Railway Company (Canadian National), use the rail line that runs along the property. Counsel explained that defendant wished, in part, to "run the spur line between the two railroads." Counsel noted that it was undisputed that the property has been designated a railroad, as well as that the Board possesses exclusive jurisdiction over, in part, the construction and operation of rail spurs and side tracks. Plaintiff's counsel agreed that plaintiff did not dispute those points. Defense counsel further explained that, when the water main was constructed, a portion running across the property was not built to railroad standards, and it explained the process for reinforcing a water main within a concrete pipe and with sand to sustain the load borne by railroad activity. The court interjected, "[t]he idea is so that something doesn't crush it." Counsel continued that plaintiff's expert, Moose, did *not* opine that additional tracks could be placed over the existing water line, which was a "glaring omission" and "obviously, no engineer would say it's ok to build a railroad track over these pipes and then face the consequences if that water main caved in after the train went across it." The court asked plaintiff's counsel, for the sake of the argument, what if defendant simply put rail tracks over the existing water main and had railroad "stuff" go over it, "wouldn't it literally crush it? And then what? Then what?" Plaintiff's counsel responded that it was a disputed question of fact, but the court disagreed, noting that plaintiff's expert (Moose) had essentially crafted an opinion that avoided answering the question whether the water main required reinforcement, if it were to intersect with a new railroad line. The court noted that Moose opined only that the water main did not need additional construction, given the property's *present* use, but that Moose did not say that the water main could

support *additional* rail spurs or tracks that might be constructed over it. Plaintiff's counsel argued that defendant's future plans were not adequately specific and further queried whether any property owner could hypothetically and without specific plans claim that an eminent-domain action is preempted because it might build a railroad on the property. The court countered, however, that the property here had already been designated railroad property, a fact that was undisputed, and that, but for the water main, defendant would be able to construct tracks over the property however it wished. The court noted that whether there is a way to use the property *without* reinforcement of the water main is not defendant's concern; rather, defendant did not want to be limited in how it used its property.

¶ 14    The court ultimately agreed that future use of the property was a proper consideration, and it noted that defendant had articulated a future use that may require a railroad line to run over the water main. Further, the court noted that, if it simply allowed the condemnation with no changes to the water main, defendant would not be able to use its property the same way it could if there was no water main there. The court then questioned the parties about defendant's requested remedy:

> "COURT: So now let's talk about the remedy that you request under the motion. Okay. So you're asking the Court to allow the condemnation but require that *the easement be contingent* upon them encasing the water main pursuant to railroad guidelines.
>
> DEFENSE COUNSEL: *Yes, Your Honor*.
>
> COURT: Okay. Does the Court have such authority to craft such an order in a motion for summary judgment?
>
> DEFENSE COUNSEL: I think it does, Your Honor, and here's why. The only thing that the Court could do otherwise is enjoin [plaintiff] from taking the condemnation—

from doing the condemnation and ordering—I suppose you could enjoin the condemnation and order them to remove the pipe, but we're not saying that. It's [plaintiff's] main water line. We're saying that they have to install it in such a way that it doesn't interfere with our property, and it's an important ruling because it affects the damages. Our damages actually go down if we win this motion because then presumably this line will be installed in such a way that it won't have any effect on our property.

PLAINTIFF'S COUNSEL: Your Honor, the proper standards to which the rail— the water pipe should be reinforced, again, it's a fact issue that needs to be resolved after you and the jury hear the evidence of the expert witnesses because, you know, our engineer may say that it needs to be reinforced to a different standard than what their engineer says.

COURT: Yeah, but the order would [be] craft[ed] it [*sic*] in such a way that it would have to be—the water main would have to be reinforced pursuant to railroad guidelines. Nothing more, nothing less. And—it sounds like to me, the way it was articulated to me, that there are specific guidelines by which the water main is protected when it intersects with a railroad—railroad line. And if the Court were to do that, then, like [defense counsel] said, the condemnation value would go down for them because it would be—it wouldn't change the possible use of said property. And, now, I don't know the cost of creating a water main like that. It's probably fairly substantial, but I don't know." (Emphases added.)

¶ 15 As such, the court agreed with plaintiff that the relevant requirements for reinforcing the water main to railroad standards required clarification. The court granted defendant's partial summary judgment motion, (1) implicitly finding that, to the extent that plaintiff's condemnation would interfere with railroad operations on defendant's property, preemption applied, (2) ordering

that plaintiff's "water main shall be constructed and[/]or replaced to current railroad standards," which would then, presumably, allow plaintiff to complete its condemnation, but (3) continuing the case for presentation of evidence on the appropriate current railroad standards for water main construction.

¶ 16    Plaintiff filed an interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a) (eff. Nov. 1, 2017) (interlocutory appeal as of right concerning injunctive relief).  Further, on September 24, 2021, we allowed plaintiff to supplement the record with the trial court's August 12, 2021, order, pursuant to Illinois Supreme Court Rule 304(a) (eff. March 8, 2016) (appeals from final judgment that do not dispose of entire proceeding), finding that there is no just reason to delay appeal of its July 13, 2021, order.[2]  On August 19, 2021, we allowed appellant's unopposed request to proceed with a briefing schedule as appropriate under Rule 304, as opposed to the accelerated briefing schedule that would be necessary for appeals under Rule 307.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, plaintiff asks that we reverse summary judgment in defendant's favor. Specifically, plaintiff argues that summary judgment was improper because defendant's plans to expand its rail infrastructure are too vague to preempt the condemnation action.  Further, plaintiff argues that, even if the plans are not too vague, whether the water main will unreasonably interfere with the use of the property for railroad transportation is a disputed issue of material fact that

---

[2] We denied, however, plaintiff's request to supplement the record with additional documents that were not before the trial court on summary judgment, such as Dahl's deposition testimony.  To the extent that those documents were included in the appendix that accompanied plaintiff's opening brief, we disregard them.

should be decided at trial. Finally, plaintiff argues that defendant failed to provide the necessary evidence to demonstrate that it was entitled to a permanent injunction.

¶ 19    Summary judgment is proper when the pleadings, depositions, admissions, and affidavits on file demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016). We review *de novo* the trial court's summary judgment ruling. *Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶ 24. Moreover, we review *de novo* a court's determination of the preemptive effect of a federal statute. *Union Pacific R.R. Co. v. Chicago Transit Authority*, 647 F.3d 675, 678 (7th Cir. 2011).

¶ 20                            A. The Plans Are Not Too Vague for Preemption

¶ 21    Plaintiff argues first that defendant failed to demonstrate that the water line interferes with a railroad's current operations or imminent plans to expand railroad infrastructure, and, therefore, the trial court improperly found that the ICCTA preempts the condemnation action. Plaintiff asserts that defendant's claim that the water main will unreasonably interfere with railroad transportation on the property is based entirely on one, self-serving statement from Dahl that "[defendant] plans to use the property that is the subject of the suit, including the property [plaintiff] seeks to condemn, for railroad purposes specifically for storage area for shipping containers, additional spur tracks, and railroad access." Plaintiff asserts that there is "no corroborating evidence" for the statement, yet the court determined that the water main will unreasonably interfere with railroad transportation, "even though the water main currently does not interfere with railroad transportation and no evidence was presented apart from this affidavit that it will interfere with railroad transportation." Plaintiff continues that this evidence, alone, is insufficient to justify ICCTA preemption because the ICCTA preempts a condemnation action only when there is evidence that the action will interfere with imminent, definite plans to expand

railroad infrastructure. Here, plaintiff argues, defendant presented vague, speculative evidence to support its ICCTA preemption claim, only a general desire for future development, and no evidence that its plans would come to fruition. Plaintiff concludes that ICCTA preemption was not established and, where courts adopt a presumption against preemption and deference must be given to the non-movant on summary judgment, the court's ruling has opened the door to a railroad being able to stop a condemnation action based solely on a few self-serving, conclusory, and speculative statements in an affidavit.

¶ 22    Defendant responds that summary judgment was appropriate and that its plans are not too vague to demonstrate interference and preemption. Defendant asserts that plaintiff's position that only interference with imminent, definite plans to expand railroad infrastructure requires preemption runs counter to the decision in *Union Pacific*, wherein the court held that a condemnation action was preempted even when the proposed taking would have prevented the railroad from using the property how it might wish in the future. *Union Pacific*, 647 F.3d at 681. Defendant notes condemnation may not be preempted in cases where the action is sufficiently insignificant that it would not interfere with the railroad transportation. But, defendant argues, the taking here would not be insignificant, because its property is relatively small and the uncontested evidence established that, if the water main is not brought to railroad standards, defendant cannot build new tracks over it. Defendant concludes that the trial court did not err in finding that, to the extent plaintiff's condemnation would interfere with defendant's plans for railroad activity, it was preempted by the ICCTA. We agree.

¶ 23    As summarized in *Union Pacific*, federal law preempts state laws that interfere with, or are contrary to, federal law; relevant here, in enacting the ICCTA, Congress provided the Board with

exclusive jurisdiction to regulate railroad transportation. *Union Pacific*, 647 F.3d at 678; 49 U.S.C. § 10501(b). Specifically:

"The jurisdiction of the Board over—

(1) *transportation by rail carriers*, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

(2) *the construction*, acquisition, operation, abandonment, or discontinuance of *spur*, industrial, team, switching, *or side tracks, or facilities*, even if the tracks are located, or intended to be located, entirely in one State,

*is exclusive*. Except as otherwise provided in this part, *the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law*." (Emphases added.) 49 U.S.C. § 10501(b).

¶ 24    The ICCTA defines "transportation" as including:

"(A)    a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, *property*, facility, instrumentality, or equipment of any kind *related to the movement of* passengers or *property*, or both, *by rail*, regardless of ownership or an agreement concerning use; and

(B)    services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, *storage*, handling, and interchange of passengers and property[.]" (Emphases added.) 49 U.S.C. § 10102(9).

"Congress's intent in the Act to preempt state and local regulation of railroad transportation has been recognized as broad and sweeping." *Union Pacific*, 647 F.3d at 678; see also *CSX Transportation, Inc. v. Georgia Public Service Comm'n*, 944 F. Supp. 1573, 1581 (N.D. Ga. 1996)

("It is difficult to imagine a broader statement of Congress' intent to preempt state regulatory authority over railroad operations").

¶ 25    The question here is whether plaintiff's proposed condemnation establishing an easement over the property for the water main is a regulation of railroad transportation that is preempted by the ICCTA. "A condemnation is a peculiar type of regulation, one specifically limited in scope to the ownership or use of one particular piece of property," thus, rendering *per se* preemption in all condemnation actions improper. *Union Pacific*, 647 F.3d at 679-80. However, a condemnation action may be preempted "as applied," if, as to the property at issue, condemnation "would have the effect of preventing or unreasonably interfering with railroad transportation." *Id.* at 679-80. There exists a general presumption against preemption, and the party contending that preemption applies bears the burden of persuasion. See, *e.g.*, *Texas Central Business Lines Corp. v. City of Midlothian*, 669 F.3d 525, 529 (5th Cir. 2012). However, the presumption against preemption applies with less force when the field at issue is one such as railroads, which have a significant historical federal presence. *Id.*

¶ 26    Here, plaintiff does not dispute that defendant's property is designated railroad property, generally covered by the ICCTA, *or* that defendant's proposed alterations concern transportation as defined by the ICCTA.[3]   Rather, plaintiff's argument is that defendant failed to meet its burden

---

[3] We note that the exemption that defendant received from the Board refers to defendant as a "noncarrier." The Board's exclusive jurisdiction, however, concerns "transportation by rail carriers". 49 U.S.C. § 10501(b). The parties do not mention defendant's possible status as a noncarrier or whether that status affects preemption here, although, in supplemental briefing, plaintiff for the first time suggests that the import of defendant's exemption is unclear. For

of persuasion to establish preemption because it failed to demonstrate that condemnation will interfere with specific, imminent plans for future railroad operations. Plaintiff asserts that defendant produced no design plans to add rail spurs or additional tracks, nor other corroboration for Dahl's affidavit statement that there exist plans to use the property for storing shipping containers, adding spur tracks, and additional railroad access. Plaintiff asserts that, where defendant's alleged plans are only vague and speculative, it cannot demonstrate the interference necessary to establish preemption.

¶ 27 First, we disagree that Dahl's affidavit was the sole evidence defendant proffered to demonstrate plans of operating and expanding its railroad operations. The record reflects that, in 2014, defendant purchased the property and then, in 2017, applied for and received an exemption from the Board. The application and exemption documents explained that defendant wished to acquire and operate a section of rail connecting the Union Pacific and Canadian National lines, and that, upon receipt of the exemption, Hussey would seek authorization to acquire defendant's line. Further, Dahl attested that the property was leased to Hussey, and defendant attached the lease agreement, which includes language reflecting plans for Hussey to acquire and operate the rail line, to provide rail service, to perform freight car switching on the property, and to use facilities on the property for freight car loading and unloading. In contrast to plaintiff's suggestion that defendant's plans are only speculative, collectively, these actions and documents corroborate Dahl's affidavit statement concerning defendant's intended use of the property, and, while defendant did not submit engineering drawings or plans of additional tracks or spurs, an intent to construct them would be a natural extension of the statements and agreements in evidence.

---

purposes of our analysis, we treat the issue as undisputed.

Accordingly, plaintiff's argument that one statement in Dahl's affidavit was defendant's sole support for its planned use of the property is inaccurate.

¶ 28    Next, plaintiff acknowledges that courts have held that plans for future railroad use are a relevant consideration but argues that preemption does not apply where the plans are not specific and imminent.  The cases it cites for that authority, however, are distinguishable.  See, *e.g.*, *Texas Central Business Lines Corp. v. City of Midlothian*, 669 F.3d 525 (5th Cir. 2012) (no preemption where railroad's arguments that local regulations would burden transportation were speculative, and where there were no definite plans for development or explanation of how future projects would be affected; however, unlike here, a condemnation action affecting permanent ownership rights was not at issue, and the regulations concerned the railroad's alleged desire to build new silos, with the court commenting that not "everything [the railroad] does on its largely vacant 243-acre leasehold is beyond the reach of the City's regulation."); *Franks Investment Co., LLC v. Union Pacific R.R.*, 593 F.3d 404 (5th Cir. 2010) (no preemption where there was no specific evidence that the local regulation would unreasonably interfere with railroad transportation; however, again, this was not a condemnation action and concerned a neighboring property owner's action to prevent the railroad from removing existing crossings); *City of Girard v. Youngstown Belt Ry. Co.*, 979 N.E.2d 1273 (Ohio 2012) ("[w]hile it is acceptable and sometimes necessary to consider a railway company's future plans when determining if the ICCTA applies to an eminent-domain action, it is also necessary to consider whether it is likely that the railway company's plans 'will come to fruition' "; no preemption where the railroad had only a hypothetical, general desire for future development, but "no concrete plans" to do so, and where it had not added the allegedly desired track over a period of 15 years; however, unlike here, the railroad company owned 55 acres of land, the portion the city wished to condemn was undeveloped, vacant land with no existing rail

line and no right-of-way; defendant here, only a *few* years after purchasing the property, signaled its intent to commence increasing railroad operations by seeking an exemption with the Board and entering into a lease agreement with Hussey). Thus, while we do not necessarily take issue with the reasoning or conclusions reached by the courts in plaintiff's cited cases, we do not find them particularly helpful here.

¶ 29   Plaintiff notes that the authority upon which defendant relies is also distinguishable, in that, although preemption was found, they involved active railroad operations where future use was deemed likely because it would improve those operations and meet increasing demand in the area. See, *e.g.*, *Union Pacific*, 647 F.3d at 675; *City of Lincoln v. Surface Transportation Board*, 414 F.3d 858 (8th Cir. 2005); *14500 Ltd. v. CSX Transp., Inc.*, 2013 WL 1088409 (N.D. Ohio 2013). While it is true that significant railroad operations are not now taking place on the property, there are already existing tracks and a rail spur there, and defendant apparently wishes to increase the property's railroad activity level: that is one point of these proceedings.

¶ 30   Ultimately, we determine that, although *Union Pacific* contains distinguishable facts, certain elements of the court's reasoning are helpful. See, *e.g.*, *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶¶ 33-35 (uniformity of the law is an important factor in deciding how much deference to afford federal court interpretations of federal law; "if the federal courts are split, we may elect to follow those decisions we believe to be better reasoned"). In *Union Pacific*, for almost 50 years, the Chicago Transit Authority (CTA) had leased from Union Pacific a right-of-way, operating trains on tracks running parallel to Union Pacific's tracks. When the parties could not agree to new lease terms or a lump-sum payment for a permanent easement, the CTA began condemnation proceedings. The court found that the CTA's threatened condemnation of 40% (approximately 13 acres) of the railroad's right of way would be an

unreasonable interference with the railroad's current operations, but *also* that, if it were unoccupied (*i.e.*, not used or taken by the CTA), the railroad *could* use the land for additional railroad lines. *Id.* at 681. The court noted that, even where there were no current plans to use it, the Board had previously recognized value in railroad property that might later be needed for railroad purposes. *Id.* (citing *Norfolk Southern Ry. Co.*, 2010 WL 691256, *4 (S.T.B. Feb. 26, 2010)). As such, the court determined, "[e]ven if the property was not being used *and* Union Pacific had *no immediate plans* to use the property, a taking of this property would still prevent Union Pacific from using it for railroad transportation in the future." (Emphases added.) *Id.* The court concluded that the CTA's use of the right of way significantly impacted railroad transportation because it prevented Union Pacific from using the property itself for additional tracks. *Id.* at 682. Indeed, the tracks the CTA operated were located only five feet away from Union Pacific's tracks. Thus, "although Union Pacific has no current plans to use the property because of the CTA's operations [under the lease], there is little doubt that it would be used whenever it became available."[4] *Id.* at 683.

¶ 31 While factually distinguishable in many ways, we agree with defendant that *Union Pacific*'s rationale is persuasive. Plaintiff does not contest that, unlike in some of its cited cases, defendant's property is already railroad property with existing tracks and an existing spur. Plaintiff

---

[4] The court also noted that no unreasonable interference and, thus, no preemption had been found in certain cases concerning utility easements, but those decisions reflect analysis, again, of the degree to which the easement would impede rail operations or pose undue safety risks. See *id.* at 682, n.9; see also *Lincoln Lumber Co.-Petition for Declaratory Order*, STB Finance Docket No. 34915, 2007 WL 2299735 (S.T.B. Aug. 10, 2007); *Maumee & Western R.R. Co.-Petition for Declaratory Order*, STB Finance Docket 34354, 2004 WL 395835 (S.T.B. March 2, 2004).

does not dispute that, again unlike its cited cases, defendant's property is not large and undeveloped; rather, it is apparently approximately 2.5 acres in size with a few (albeit relatively rustic) structures built on it and the water line running across the width of it. Like in *Union Pacific*, where the railroad's future development would likely be impacted by allowing the CTA to take some of its property only five feet away from existing railroad lines, here, there would likewise be little room for defendant to construct upon the property to expand railroad operations without encountering plaintiff's water line. Thus, even if defendant has not presented specific drawings or plans reflecting imminent construction of new rail lines or spurs, plaintiff's taking could unreasonably interfere with defendant's plans to do so. Plaintiff may be frustrated that, for more than 50 years, its authority to operate the water main without an easement went unchallenged by prior owners, particularly when it does not agree that continued operations would impact defendant's railroad. Yet, the CTA was also likely frustrated that for 50 years, pursuant to its agreement with the railroad, it used the same tracks over which it wished to obtain an easement, likewise believing that its continued operations would not impact the railroad's future operation. However, in both cases, allowing the *user* of railroad property to become an easement *owner* on that property impacts the railroad's ability to operate as it might wish in the future.

¶ 32    This leads us to another aspect of *Union Pacific* that we find relevant here. There, the court reasoned that condemnation would negatively impact the strength of Union Pacific's legal remedies:

> "In addition, the fact that Union Pacific would have available legal remedies to enforce an easement's obligations does not make these remedies equivalent to those it has as a landlord; a lessor with the ability to oust the lessee if it fails to uphold its lease obligations is in a stronger position than a party filing a lawsuit to enforce the terms of an

easement. In short, Union Pacific would lose valuable property rights in the condemnation, and the CTA would gain perpetual control of the property without it being subject to termination—a manner of control that the CTA currently does not enjoy." *Id.*

¶ 33 Here, at oral argument on the partial summary judgment motion, the trial court touched upon what might happen if plaintiff were allowed condemnation without defendant's requested parameters, and we revisit that scenario now. Plaintiff opines that, without specific construction plans, preemption is premature, and, so, the court should allow condemnation with no water main reinforcements; then, if defendant wants to add rail spurs or tracks in the future and the water main interferes with that construction, defendant can seek a mandatory permanent injunction, requiring plaintiff to reinforce the water main. This assertion does not adequately recognize the shift in defendant's legal position between the present and proposed scenarios. If plaintiff is allowed the easement without conditions, defendant loses certain enforceable property rights over that condemned portion. See, *e.g.*, *Kaskaskia*, 2019 IL App (5th) 180403, ¶ 21 (an easement is a legal interest in the property of another). As far as we can tell, if defendant then wished to construct additional rail lines or spurs, its options would be limited to: (1) not doing so, frustrating its desired operations as a railroad; (2) proceeding without regard to the existing water main, potentially crushing it and risking legal exposure (if, in light of the water main, it were even able to obtain the necessary plans, permits, etc., to construct); or (3) absorbing the costs of yet more litigation to obtain a court order requiring plaintiff, now the easement owner, to dig up and reinforce its water main. In contrast, where defendant presently owns the property and plaintiff has no easement, defendant is simply seeking that any condemnation relief be conditional, so as to avoid the three scenarios outlined above. Construction to reinforce the water main might be expensive, but, presumably, so would removing or re-routing the water line around the property. Defendant is not

presently arguing that plaintiff should remove and re-route the water line but, technically, it probably could. In other words, defendant is in a stronger position to protect its property rights now than it will be if condemnation is allowed and it later begins railroad construction. Plaintiff asserts that defendant has not demonstrated that its construction plans are economically viable, but, even if that is relevant, *allowing* condemnation without limitations would likely prove economically damaging to future railroad operations. As in *Union Pacific*, we agree that preemption applies where condemnation would unreasonably interfere with defendant's future use of the property for railroad purposes, which, here, includes the economic impact that defendant's loss of legal advantage would likely entail. In sum, based upon this record, the trial court did not err in finding that, as pleaded, plaintiff's proposed condemnation action is preempted.

¶ 34                    B. No Genuine Issue of Material Fact

¶ 35    Next, plaintiff argues that there exists a material factual dispute as to whether the condemnation action would unreasonably interfere with railroad transportation. Plaintiff argues that defendant presented no evidence that the water main currently interferes with railroad transportation and only speculative assertions that it would unreasonably interfere with railroad transportation in the future. For example, plaintiff notes, although defendant asserted that the water main will prevent it from constructing additional rail spurs, it provided no plans or specifications for such rail spurs, let alone plans showing that new rail spurs would intersect with the water main. Nor did its expert explain why the standards that apply to the reinforcement of the water main under Union Pacific tracks, which haul massive freights nationally, would apply to the few yards of cargo transportation on defendant's rail spur. Plaintiff argues that no evidence demonstrated that the amount of rail traffic or revenue from operating a rail spur on defendant's property would decrease because of the water main. Further, plaintiff asserts that it presented

evidence that the water main would *not* unreasonably interfere with railroad transportation, creating a disputed issue of material fact. It notes that DeLacy appraised the property and opined that there was no likelihood that it would be economically viable to use the property for container storage. In addition, engineering expert Moose opined that the existing railroad spur could operate without additional improvement to the water main infrastructure and that the northern portion of the property could be utilized without modification to the existing rail spur or the water main. In sum, plaintiff argues, summary judgment was improper because its evidence raises a fact question about whether the condemnation unreasonably burdens rail transportation.

¶ 36    Defendant responds that its expert, Kolb, and plaintiff's expert, Moose, both concluded that the existing water main is insufficient to support rail tracks. Kolb concluded that the existing water main was installed without a surrounding carrier pipe and sand, which would avoid putting the load of railroad tracks directly onto the water pipes and, therefore, it does not meet railroad criteria for utility crossings because it cannot support railroad loadings. Moose, in turn, did not refute any of Kolb's points. Moose opined that the water main did not require improvements for the existing rail spur and that the area between the existing spur and the northern property boundary line, "although *not* suitable to house additional rail lines," (emphasis added.) could be used for a variety of "other purposes." Reading between the lines, defendant asserts, plaintiff's expert concluded that, because of the water main, the northern portion of the property is "not suitable to house additional rail lines." As such, there is no genuine dispute that the water main interferes with use of the railroad. We agree.

¶ 37    Defendant's expert testified that the water main as currently constructed cannot support additional rail lines. Specifically, Kolb opined that the existing water main is "not sufficiently constructed for the purpose of supporting railroad loadings and does not meet railroad criteria for

utility crossings." Further, Kolb opined, "[t]he existing water main renders [defendant's] property unusable for railroad purposes in the area over and north of the existing water main." In his affidavit and report, Moose did not contradict these points. As noted by defense counsel and the trial court at oral argument on the summary judgment motion, Moose's opinion was carefully crafted to avoid the main question, leaving a glaring omission. Moose opined that "the area between the north property line and rail spur, *although not suitable to house additional rail lines*, could be utilized for *other* purposes, including but not limited to unloaded rail car storage and other general material storage." (Emphases added.) Further:

> "Based on my experience and review of the documents it is my opinion that the presence of the water main does not substantially limit the future use of the property. The *existing* rail spur could resume without additional improvement to the water main infrastructure. The northern portion of the [p]roperty, *between the existing rail spur and the northern property boundary, could be used for a variety of purposes, including but not limited to housing shipping containers or other material storage*. The rail spur, therefore, could be utilized without modification to the rail line or the water main." (Emphases added.)

¶ 38 Although Moose opined that the water main did not require improvements for the *existing* rail spur, the water main does not run beneath that spur. He did not opine that the water main could sustain construction of additional spurs or lines crossing over it on the northern portion of the property. As it is undisputed that, unless the existing pipe is fortified, railroad tracks will not be able to be placed on the northern part of the property and the maintenance of an unfortified pipe will interfere with railroad operations, there exists no genuine issue of fact.

¶ 39     However, we do agree with plaintiff, *as did the trial court*, that questions about the appropriate construction standards themselves remain at issue. We would also note that, although plaintiff complains that defendant did not present specific plans reflecting imminent construction or that would support defendant's position that the current water main is not built to sufficient standards, the trial court continued the case for a hearing on this very issue; namely, the court acknowledged that a rail spur might not move as much traffic or weight as a railroad and, therefore, a hearing must be held to determine the appropriate current railroad standards. That hearing would necessarily require evidence as to whether defendant anticipates building rail tracks, rails spurs, or both, as well as the current railroad standards for water mains intersecting with those railroad elements. Thus, although the court granted defendant's partial summary judgment motion, it nevertheless reserved for hearing the issue of what reinforcements would be required for the existing water main to satisfy current railroad standards.

¶ 40     In sum, defendant presented evidence that the existing water main is not constructed to support additional rail lines, and plaintiff did not rebut this evidence. There is, therefore, no genuine issue of material fact on the question whether the water main would interfere with defendant's future operations.

¶ 41                    C. No Permanent Injunction was Entered; Remand Required

¶ 42     Plaintiff next argues that the court's order constitutes a mandatory permanent injunction, as it orders plaintiff to perform a specific, permanent action, *i.e.*, reinforcement of the water main, yet defendant did not present evidence to establish the elements necessary for an injunction. Specifically, plaintiff argues that defendant did not show that it possessed a clear and ascertainable right needing protection, irreparable harm in the absence of injunctive relief, or the lack of an adequate remedy at law. See, *e.g.*, *Vaughn v. City of Carbondale*, 2016 IL 119181, ¶ 44. Further,

plaintiff emphasizes that no evidence was presented about imminent harm, nor as to why money damages would not be appropriate. It notes that the absence of an adequate remedy at law is a condition precedent to an injunction, and a remedy at law is only inadequate where "monetary damages cannot adequately compensate the injury." *Hensley Construction, LLC v. Pulte Home Corp.*, 399 Ill. App. 3d 184, 190 (2010). Plaintiff notes that defendant never requested a mandatory permanent injunction, and no hearing on an injunction was held; thus, it contends that the court lacked authority to issue such relief. As a permanent injunction is an extraordinary remedy, issued here without evidentiary support or a hearing, plaintiff argues that the court's order must be vacated.

¶ 43 Defendant responds first that the court did not grant a permanent injunction. It contends that it never sought a permanent injunction, nor did the court award one, because the relief describes the nature and extent of the easement, should the court grant the condemnation. Defendant notes that, in its answer and affirmative defense, it asserted that plaintiff's eminent domain rights were limited and prayed that any relief afforded to plaintiff be limited to the extent that it does not interfere with defendant's railroad operation. In addition, in its summary judgment motion, defendant again argued that plaintiff's right to condemn is limited, noting that the ICCTA did not prevent any condemnation, but that the court should fashion a remedy so that the taking will not interfere with [defendant's] use of the property as a railroad by requiring that, if a judgment for condemnation is entered, plaintiff's water main meet minimum railroad standards. Defendant argues that the court's order does not constitute mandatory injunctive relief because it is not mandatory. Rather, it is merely a condition of the easement plaintiff seeks:

"[Plaintiff] is free to dismiss its complaint for condemnation and relocate its water main somewhere else. Defendant asserts that this relief is a limitation on the scope of any

easement, not injunctive relief. All this order does is make the determination that any easement granted to [plaintiff] will include a term [requiring] that the water main be built to current railroad standards."

¶ 44 Defendant concludes that the order should be read as a limitation of any easement granted at the end of condemnation proceedings, not as requiring plaintiff to construct a new water main as mandatory injunctive relief because it requested only that the water main be replaced to current standards "if a judgment for condemnation is entered," and, notably, that plaintiff "has no right to replace the water main absent it acquiring an easement through condemnation."

¶ 45 In addition, defendant asks that we find plaintiff's argument forfeited. Again, it notes that plaintiff never argued below that defendant did not establish the elements required for a permanent injunction. The argument plaintiff raised in response to defendant's requested relief on summary judgment concerned only whether the water main interferes with the use of the property as a railroad. Plaintiff did not argue that defendant was asking for a mandatory injunction or should be denied such relief due to a failure of proof. As such, defendant urges, the argument is forfeited.

¶ 46 In reply, plaintiff asserts that forfeiture is a limitation on the parties, not the courts. Further, it argues that no matter how the order is characterized, its nature is one of injunctive relief, because it orders plaintiff to perform a specific, permanent action. Plaintiff claims that defendant's assertion that plaintiff could simply dismiss the condemnation lawsuit and relocate its water main ignores the procedural posture of this case. "The trial court could have denied [plaintiff's] request for approval of condemnation on grounds of preemption, but it had no authority to allow condemnation (which it did not clearly do in its order) and then—rather than determine just compensation—fashion an unusual injunctive remedy."

¶ 47    We agree with defendant that it neither asked for an injunction, nor did the court grant one. Defendant requested only conditional relief:  *if* the court granted plaintiff an easement, *then* plaintiff should be required as a condition of that easement to reinforce its water main.  The court verified this request at oral argument:

> "COURT:  So now let's talk about the remedy that you request under the motion. Okay.  So you're asking the Court to *allow the condemnation but require that the easement be contingent upon them encasing the water main pursuant to railroad guidelines.*
>
> DEFENSE COUNSEL:  *Yes, Your Honor*.
>
> COURT:  Okay.  Does the Court have such authority to craft such an order in a motion for summary judgment?
>
> DEFENSE COUNSEL:  I think it does, Your Honor, and here's why.  *The only thing that the Court could do otherwise is enjoin [plaintiff] from taking the condemnation*—from doing the condemnation and ordering—*I suppose you could enjoin the condemnation and order them to remove the pipe*, but we're not saying that.  It's [plaintiff's] main water line.  We're saying that they have to install it in such a way that it doesn't interfere with our property, and it's an important ruling because it affects the damages.  Our damages actually go down if we win this motion because then presumably this line will be installed in such a way that it won't have any effect on our property."  (Emphases added.)

¶ 48    As noted above, the court was fully aware that its order concerned placing a limitation or contingency upon any allowed condemnation.  Generally, expressly granted easements may contain limitations in scope and purpose.  See, *e.g.*, *Duresa v. Commonwealth Edison Co.*, 348 Ill. App. 3d 90, 101-02 (2004) ("If an easement is limited in scope or purpose, the property owner is

entitled to prevent the burden of the easement from being increased."). Defendant here also noted for the court the alternative that plaintiff interestingly raises for the first time now—denying condemnation—but plaintiff certainly never argued in response that, if the court found preemption applied, it could only deny plaintiff condemnation, not enter the type of relief defendant was seeking. For this reason, although plaintiff is correct that forfeiture is a limitation upon the parties not the court, and we can overlook forfeiture when necessary to obtain a just result or to maintain a sound and uniform body of precedent (*Jill Knowles Enterprises, Inc. v. Dunkin*, 2017 IL App (2d) 160811, ¶ 22), honoring the forfeiture here would not be inappropriate. Plaintiff's failure to raise the injunctive-relief argument led the court to believe that plaintiff's position was simply that no preemption applied or that fact issues existed, not that, if the court found preemption, it must simply deny condemnation and could not enter defendant's requested relief.[5]

¶ 49    In addition, plaintiff's contention that the court should have outright denied condemnation is an overly simplistic suggestion that would do little to advance resolution of the current issues. The parties' litigation apparently arose when defendant filed an inverse condemnation complaint, which plaintiff agreed it could not defend. Plaintiff's main water line runs beneath defendant's property, so it tried to purchase the easement. After the parties were unable to agree upon a fair purchase price, plaintiff filed its condemnation action, defendant asserted that plaintiff's eminent-domain powers are limited, given the property's railroad status, and defendant also filed a counterclaim for trespass. Accordingly, the court was not being asked by any party on summary judgment to outright deny condemnation or enter an injunction, and it was aware that (1) the parties

---

[5] Plaintiff's position in its reply brief that it did argue against an injunction "in substance," though not using the specific language concerning injunctive relief, is, at best, a stretch.

had already been down the road of trying, unsuccessfully, to assess appropriate monetary remedies; (2) defendant was requesting that condemnation be denied *only* to the extent that it would interfere with railroad operations *and* that relief be *contingent* on fixing the water main; and (3) plaintiff raised no argument that the court could not impose such relief, that the requested relief constituted an improper injunction, or that, if the court found preemption, it should simply deny the condemnation.

¶ 50    Nevertheless, although we disagree with plaintiff's characterization of the order as injunctive, we question whether the court, upon implicitly finding that the condemnation action as pleaded was preempted, properly entered relief.  While there is no dispute that the trial court had jurisdiction to determine the preemption issue, which it implicitly resolved in defendant's favor, preemption suggests that the Board would be better positioned to decide relief, as opposed to the court's decision here to "fix" or "avoid" preemption by crafting relief that *it* deemed would result in noninterference (or, perhaps, not-unreasonable interference), with railroad operations.  As such, after oral argument, we asked the parties to file supplemental briefs on whether the court's authority to order such relief was impacted by the preemption finding.  Specifically, our order stated:

> "The trial court's order granting partial summary judgment implicitly found that the condemnation complaint as pleaded is preempted by the ICCTA. On the court's own motion, the parties are ordered to file supplemental briefs on the issue whether, once the trial court found the condemnation complaint preempted, it thereafter had authority to enter relief other than dismissing the complaint with prejudice, or whether further condemnation proceedings or requests for relief must be brought before the Surface Transportation Board. For purposes of the supplemental briefing, the parties should assume that the trial court had

authority to make the preemption finding and should focus on the impact of that finding with respect to its authority thereafter."

¶ 51    The supplemental briefing is complete and, having considered the parties' submissions, we conclude that it is appropriate to remand this case for the trial court to order plaintiff to petition the Board for declaratory relief. In *City of Ozark, Arkansas v. Union Pac. R.R. Co.*, 843 F.3d 1167, 1171 (8th Cir. 2016), the court noted that, if there is no showing of unreasonable interference with rail transportation, then a court may proceed to resolve the dispute applying relevant state law condemnation principles. "However, if the court concludes that a proposed [    ] easement would unreasonably interfere, then the [ICCTA's] preemption provision grants the [Board] exclusive jurisdiction, and the lawsuit or condemnation proceeding *must be dismissed or enjoined* for lack of jurisdiction." (Emphasis added) *Id.* at 1171. The court continued that, while the Board has encouraged courts (as here) to resolve disputes based on applicable state law, if the dispute involves "routine non-conflicting use," in "many cases," parties have petitioned the Board for an order declaring its position on the preemption issue, with the agency sometimes conducting declaratory order proceedings. *Id.* at 1172. The court cited a case where an appellate court had remanded to a trial court, instructing it to "direct" the plaintiff railroad to petition the Board " 'to resolve any issues concerning the [Board's] jurisdiction.' " *Id.* (quoting *Wichita Terminal Ass'n, BNSF Ry. & Union Pac. R.R.*, 2015 WL 3875937, *2 (S.T.B. June 22, 2015)). Accordingly, in the case before it, the court noted that there was evidence on summary judgment supporting the railroad's position that reopening a specific crossing would impede rail operations or pose undue safety risks (*i.e.*, triggering preemption), therefore:

> "[o]n this record, it appears that an order reopening the crossing is within the
> [Board's] exclusive jurisdiction [citation]. But, as the [Board's] decision in *Wichita*

*Terminal* illustrates, if presented the preemption issue the agency could determine that any order restoring this crossing is preempted, or that some accommodation of the parties' interests may be compatible with sound rail transportation, in which case state law rights and duties would come into play." (Emphasis added.) *City of Ozark*, 843 F.3d at 1173. The court then held it appropriate, if the plaintiff requested an opportunity to petition the Board for a declaratory order resolving the issue of its exclusive jurisdiction, for the district court to defer entry of a final preemption determination. *Id.*

¶ 52 Here, we agree that the record supports the trial court's implicit preemption finding. However, the court did not dismiss or enjoin the action; rather, it crafted relief to circumvent preemption. As dismissing the complaint will not aid the controversy because plaintiff is seeking an easement for a water main that already exists on defendant's property (and we remain mindful that defendant has a counterclaim for trespass), enjoining the action and seeking input from the Board is the most appropriate approach. We do not find persuasive defendant's arguments suggesting that we should not refer this matter to the Board and, indeed, defendant ultimately acknowledges that referring a case to the Board is an option meant to aid the court. Accordingly, we reverse in part, vacate the remedy section of the court's judgment, and remand the case with directions for the trial court to stay proceedings and direct plaintiff to petition the Board to resolve the parameters of its jurisdiction and any relief compatible with the parties' interests.

¶ 53                                    III. CONCLUSION

¶ 54 For the reasons stated, the judgment of the circuit court of Lake County is reversed in part, vacated in part, and remanded.

¶ 55 Reversed in part, vacated in part, and remanded.